# Exhibit 3

Motion for a Temporary Restraining Order and for a Preliminary Injunction
September 9, 2025

Electronically Filed
9/9/2025 11:21 AM
Steven D. Grierson
CLERK OF THE COURT

**MPRI**

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Road, Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Angela Harris.

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ANGELA HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>TRACY DARLING, an individual; ALEXANDER KOHLRAUTZ, an individual; DOES 1 through 10; ROE CORPORATIONS 11 through 20;<br><br>Defendants. | Case No.<br><br>Dept.<br><br>**[Hearing requested]**<br><br>***EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff Angela Harris moves this Court for an *ex parte* temporary restraining order and preliminary injunction against Defendants Tracy Darling and Alexander Kohlrautz prohibiting them from further use or dissemination of recordings in their possession of Plaintiff Harris's therapy sessions with Defendant Darling. Plaintiff also requests that the Court require Defendants to destroy the recordings of Plaintiff's therapy sessions that they currently do possess. Defendants have already disseminated these recordings, which contain private and sensitive personal information, to third parties and cannot be permitted to continue their unlawful campaign against Plaintiff Harris.



Case Number: A-25-927577-C

*Ex parte* relief is necessary. Defendant Darling, who was Plaintiff Harris's therapist, has already provided her son, Defendant Kohlrautz, with recordings of Plaintiff's therapy sessions, evidencing a clear disregard for her obligations to Ms. Harris that she will likely violate again, and Defendant Kohlrautz has already attempted to extort Ms. Harris, threatening to ruin her life if she did not bend to his will. Considering Plaintiff has no intention of complying with those demands, he could make these recordings public at any time. Defendants have already demonstrated an appalling lack of ethics regarding Ms. Harris's private, sensitive, and confidential information. If they receive notice of this lawsuit before this Court enjoins them from disseminating these recordings further, Ms. Harris rightly fears that they will immediately publicize them before this Court can enjoin their conduct.

This Motion is based upon the attached memorandum of points and authorities, the Verified Complaint, the papers and pleadings on file in this action, the attached evidence, and any oral argument permitted by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0 INTRODUCTION

Plaintiff Angela Harris requests that this Court issue an *ex parte* temporary restraining order enjoining Defendants from further unlawful dissemination of recordings of her therapy sessions with Defendant Tracy Darling, including but not limited to recordings that Defendants have manipulated. After this Court issues a temporary restraining order and Defendants are served with this lawsuit, Plaintiff requests that the Court convert that temporary restraining order into a preliminary injunction.

In 2017, Ms. Harris's husband tragically passed away. Her therapist, Defendant Darling, used the death of Ms. Harris's husband to convince her to allow Ms. Darling to record their therapy sessions. Defendant Darling assured Ms. Harris that the recordings would assist in Ms. Harris's recovery and explicitly promised that she would never share them with third parties.

Defendant Darling lied. She intended to use the recordings against Ms. Harris and provided them to her son, Defendant Alexander Kohlrautz. Upon receiving the recordings, Defendants manipulated and selectively edited the recordings to twist Ms. Harris's words and opinions, and Defendant Kohlrautz used them to extort Plaintiff Harris. Mr. Kohlrautz is the father of Ms. Harris's grandchildren and is engaged in a contentious custody dispute with Plaintiff's daughter. Mr. Kohlrautz told Ms. Harris that he would ruin her life if she continued to assist her daughter in the dispute. Defendant Kohlrautz meant that he would release the recordings of her therapy sessions to the public unless Ms. Harris did as he demanded and that is how she perceived his words.

Equitable injunctive relief exists for instances like the one presently before the Court. Defendant Darling has already demonstrated a shocking lack of responsibility and ethics with recordings of her patient's therapy sessions, and Defendant Kohlrautz has informed Ms. Harris that he will use them against her if she does not bend to his will and do his bidding. If this case proceeds in the ordinary course without injunctive relief, Defendants will cause irreparable harm to Ms. Harris's reputation and her mental state. Their behavior must be enjoined. Plaintiff Harris respectfully requests that the Court grant the instant Motion.

## 2.0 FACTUAL BACKGROUND

Plaintiff Angela Harris is a private individual living in Clark County, Nevada. (*See* Verified Complaint, ¶ 1) One of her daughters married Defendant Alexander Kohlrautz, and they had 2 children together. (*See Id.*, ¶ 3) Defendant Tracy Darling is Mr. Kohlrautz's mother. (*See Id.*, ¶ 2) She additionally advertises herself as and purports to be a professional, but unlicensed, therapist. (*See Id.*, ¶¶ 2, 10)

In 2015, Plaintiff Angela Harris began engaging in mental health counseling with Defendant Tracy Darling. (*See* Verified Complaint, ¶ 9) Ms. Harris chose Ms. Darling as her counselor because she trusted her. (*Id.*) Ms. Harris' daughter was married to Ms. Darling's son, and they had children together. (*Id.*) Ms. Darling represented herself as a religious and ethical

person. (*See Id.*) Based upon promises by Ms. Darling that she would keep the details of their counseling sessions private and not disclose the contents or subjects of their discussions with third parties, Ms. Harris provided Ms. Darling with confidential and sensitive information during these counseling sessions. (*See Id.*, ¶ 11)

For approximately two years, Ms. Harris engaged in occasional counseling sessions with Ms. Darling. (*See* Verified Complaint, ¶ 12) In 2017, Plaintiff Harris's husband passed away, leaving her emotionally devastated and vulnerable. (*See Id.*, ¶ 13) Plaintiff Harris additionally received a large life insurance payout upon her husband's death. (*See Id.*, ¶ 14) Defendant Darling took advantage of Ms. Harris's vulnerable mental state to encourage and manipulate Ms. Harris into increasing the number and frequency of their therapy sessions, which resulted in increased payments to Defendant Darling. (*See Id.*)

Defendant Darling additionally convinced Ms. Harris into allowing her to record their therapy sessions. (*See* Verified Complaint, ¶ 15) Ms. Darling represented that these recordings would be beneficial to Ms. Harris's recovery. (*See Id.*) Ms. Darling explicitly promised Ms. Harris that the recordings of their sessions would remain confidential and that she would not share them with anyone. (*See Id.*, ¶ 16) Without these explicit promises from Ms. Darling, Plaintiff Harris would not have permitted Defendant Darling to record their therapy sessions. (*See Id.*, ¶ 17)

Once Ms. Harris consented to Ms. Darling recording their therapy sessions, Defendant Darling fostered Ms. Harris' dependency on her counseling sessions to cope with the death of her husband and to manipulate Ms. Harris into sharing deeply private and personal information with Ms. Darling. (*See Id.*, ¶ 18) This did not initially concern Ms. Harris. She trusted Defendant Darling, and Ms. Darling had promised her that what the two of them discussed would remain private and confidential. (*See Id.*, ¶ 19) Moreover, while Ms. Darling was not licensed, Ms. Harris knew that therapists had a duty of confidentiality to their patients. (*See Id.*)

In January of 2025, Ms. Harris discovered that Ms. Darling had shared the recordings of their therapy sessions with her son, Defendant Alexander Kohlrautz. (*See* Verified Complaint, ¶

20) Defendant Darling did not request, nor obtain, Ms. Harris' permission to share these recordings with Defendant Kohlrautz. (*See Id.*) Rather, Ms. Darling shared these recordings with Mr. Kohlrautz without Ms. Harris's permission or consent and for the purpose of embarrassing and injuring Ms. Harris. (*See Id.,* ¶¶ 20-21) Defendants also manipulated the recordings to create a deliberately misleading and selectively edited compilation that misrepresents Ms. Harris's words, beliefs, and character. (*See Id.*, ¶ 21) Defendant Darling knew that Ms. Harris would suffer extreme emotional injury if the recordings of their therapy sessions were shared, and that is precisely what Ms. Darling intended to do. (*See Id.*, ¶ 22)

Once in possession of these recordings, Mr. Kohlrautz shared them with at least one third party without Ms. Harris's knowledge or consent. (*See Id.*, ¶ 23) Mr. Kohlrautz shared the recordings for the purpose of causing emotional injury to Ms. Harris. (*See Id.*) Since that time, Mr. Kohlrautz has threatened to ruin Plaintiff Harris's life if she did not do as he demanded. (*See Id.*, ¶ 24) Defendant Kohlrautz meant that he would release these manipulated recordings online to the general public to undermine, damage, and disrupt Ms. Harris' professional career, including her upcoming publications, and that is how she perceived his threat. (*See Id.*)

Specifically, Defendant Kohlrautz is currently engaged in a heated child custody battle with Plaintiff's daughter. (*See* Verified Complaint, ¶ 25) Mr. Kohlrautz informed Plaintiff that he would ruin her reputation and her life unless Ms. Harris stopped assisting her daughter in the custody dispute. (*See Id.*) Based upon Ms. Darling's and Mr. Kohlrautz's conduct, Plaintiff Harris has suffered extreme emotional distress. This distress has manifested in physical symptoms, including sleeplessness and insomnia, panic attacks, depression, and extreme anxiety. (*See Id.*, ¶ 26)

Ms. Harris is extremely concerned that Defendants will release recordings of her therapy sessions online. Defendants have demonstrated that they are not concerned with confidentiality. After all, Ms. Darling gave the recordings to her son unlawfully, and her son immediately turned the recordings over to at least one third party, then began using them to blackmail Ms. Harris.

Plaintiff has genuine, well-founded fears that, immediately upon discovering that she has sued them, Defendants will make the recordings public before the Court can tell them they are not permitted to do so. Plaintiff Angela Harris requests immediate, and *ex parte,* injunctive relief to prevent this from happening.

**3.0 LEGAL STANDARD**

A plaintiff is entitled to injunctive relief "where the moving party can demonstrate that the nonmoving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory relief is inadequate and that the moving party has a reasonable likelihood of success on the merits." *Boulder Oaks Cmty. Assn. v. B&J Andrews Enters., LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009); NRS 33.010. A court may also "weigh the public interest and the relative hardships of the parties in deciding whether to grant a preliminary injunction." *Clark County Sch. Dist. v. Buchanan*, 112 Nev. 1146, 1150, 924 P.2d 716, 719 (1996). These standards apply equally when the plaintiff requests a temporary restraining order. *See Coronet Homes, Inc. v. Mylan*, 84 Nev. 435, 442, 442 P.2d 901, 901-902 (1968).

**4.0 ARGUMENT IN SUPPORT OF INJUNCTIVE RELIEF**

**4.1 Plaintiff can demonstrate a likelihood of success**

In her Complaint, Plaintiff Angela Harris asserted claims against Defendant Tracy Darling for (a) invasion of privacy – public disclosure of private facts; (b) promissory estoppel; (c) fraud in the inducement (d) defamation; and (e) intentional infliction of emotional distress. She asserted claims against Defendant Alexander Kohlrautz for (a) invasion of privacy – public disclosure of private facts; (b) intentional infliction of emotional distress; (c) defamation; and (d) civil extortion. This Motion is based upon all claims except those for defamation and intentional infliction of emotional distress. Plaintiff would be entitled to injunctive relief if she was able to show a likelihood of success as to just one of her claims for relief. However, Plaintiff Harris is able to show a likelihood of success with regard to each of her claims discussed in this Motion. Injunctive relief must issue, and Plaintiff respectfully requests that the Court grant her Motion.

#### 4.1.1 Public Disclosure of Private Facts

Plaintiff is likely to prevail on the invasion of privacy claims that she asserted against Defendants Darling and Kohlrautz. The Nevada Supreme Court has recognized actions for invasion of privacy. *See Montesanto v. Donrey Media Group*, 99 Nev. 644, 649, 668 P.2d 1081, 1084 (1983), citing *Norman v. City of Las Vegas*, 68 Nev. 38, 177 P.2d 442 (1947). To prevail on an invasion of privacy claim for public disclosure of private facts, Plaintiff "must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *State v. Eighth Jud. Dist. Ct.*, 118 Nev. 140, 150, 42 P.3d 233, 240 (2002), quoting *Montesano*, 99 Nev. at 649, 668 P.2d at 1084. A plaintiff must also show that she had a reasonable or objective expectation of privacy in the information being disclosed. *Franchise Tax Bd. of Cal. v. Hyatt*, 130 Nev. 662, 683-84, 335 P.3d 125, 139-40 (Nev. 2014) (vacated on other grounds by *Franchise Tax Bd. of Cal. v. Hyatt*, 136 S. Ct. 1277 (2016) (citing Restatement (Second) of Torts § 652A (1977)).

In this instance, Defendants have provided private facts to third parties that Plaintiff revealed during a therapy session. The things that Plaintiff Angela Harris revealed during therapy were personal, sensitive, and confidential. Not only did Defendant Darling promise Ms. Harris that she would not share these recordings with anyone, she was also Ms. Harris's therapist and had a duty of confidentiality to her patient. After Defendant Darling breached Plaintiff's trust and provided recordings of those therapy sessions to her son, Defendant Kohlrautz, he used them to attempt to extort her. There is no cognizable argument that Defendants' actions would not be offensive or objectionable to a reasonable person.

Therapists have a duty of confidentiality to their patients. *See, e.g.,* NRS 49.209. Even if Defendant Darling did not have a duty because she was practicing without a license, Ms. Darling explicitly and repeatedly promised Ms. Harris that their communications, and the recordings of those communications, would be kept confidential.

Defendant Kohlrautz should not possess the recordings of Ms. Harris's therapy sessions in the first place. But once he had them, he also abused them and used them to attempt to extort Ms. Harris. Extortion is so offensive and objectionable to ordinary people that it is a crime in every U.S. state, including Nevada. *See* NRS 205.320.

Defendant Darling exploited Plaintiff's trust and Plaintiff's grief at losing her husband to extract personal information from her, which she then unlawfully revealed to her son. Defendant Kohlrautz exploited Ms. Harris's fear of this information being disseminated further to attempt to extort her and blackmail her into doing what he wanted. Defendants' actions would be highly offensive to a reasonable person of ordinary sensibilities. Plaintiff is likely to prevail on the merits of this claim and is entitled to the requested injunctive relief.

#### 4.1.2 Promissory Estoppel

Ms. Harris is likely to prevail against Defendant Darling on her claim for promissory estoppel, which is an equitable doctrine that arises where a promisor makes a promise which she should reasonably expect to induce action or forbearance on the part of the promisee and which does induce such action or forbearance. *See Pink v. Busch*, 100 Nev. 684, 689, 691 P.2d 456, 459 (1984). For Ms. Harris to establish promissory estoppel against Defendant Tracy Darling, she must demonstrate: (1) the party to be estopped is apprised of the true facts; (2) the party to be estopped must intend that his conduct would be acted upon, or must act so that the party asserting the claim has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel relied to his detriment on the conduct of the party being estopped. *See Id.*

In the instant case, following the death of Ms. Harris' husband, Defendant Darling convinced Ms. Harris to allow her to record Ms. Harris' therapy sessions so that she could use those recordings against Ms. Harris. While Ms. Darling knew that she intended to betray Plaintiff Harris's trust, she lied to Ms. Harris and told her that the recordings would be to aid in her recovery

and promised Ms. Harris that she would never share the recordings with a third party. Darling specifically told these lies to cajole Ms. Harris into allowing the recordings.

Defendant Darling's explicit promise not to share the recordings with anyone and to keep them confidential did cause Ms. Harris to agree to allow her therapy sessions to be recorded. She trusted Ms. Darling as her therapist and advisor and as, ostensibly, a member of her family. After all, Ms. Darling's son was married to Plaintiff Harris's daughter. Defendant Darling knew that Ms. Harris would believe and rely upon her lie, which is why she told it.

Based upon Defendant Darling's lie, Ms. Harris allowed her therapy sessions to be recorded. Ms. Darling betrayed that trust, as she planned to do, by giving the recordings to her son. Ms. Darling should be held to her promise and estopped from breaking it. Plaintiff is likely to prevail upon this claim, necessitating injunctive relief.

#### 4.1.3 Fraud in the Inducement

Plaintiff is likely to succeed on her claim for fraud in the inducement against Defendant Tracy Darling. To establish fraud in the inducement, Ms. Harris is required to show: (1) a false representation by Defendant Darling; (2) Ms. Darling's knowledge that the representation was false; (3) Ms. Darling's intention to induce Plaintiff Harris to consent based upon the false representation; (4) Ms. Harris' justifiable reliance upon the representation; and (5) damages resulting from such reliance. *See J.A. Jones Constr. Co. v. Lehrer McGovern Bovis*, 120 Nev. 277, 290-92, 89 P.3d 1009, 1018-1019 (2004). Plaintiff Harris can establish each of these elements, necessitating that the Court grant the instant Motion.

Following the death of Plaintiff Harris's husband in 2017, Defendant Darling encouraged Ms. Harris to modify their oral therapist/patient agreement. Specifically, she wanted to increase the frequency of their sessions because she knew that Ms. Harris had received a payout from her husband's life insurance policy. However, more importantly for purposes of this Motion, she convinced Ms. Harris to allow her to record their therapy sessions by explicitly promising that the recordings would never be shared with third parties.

Defendant Darling knew that this representation was false when it was made. She intended to share the recordings when it would benefit her to do so. In fact, she shared the recordings with her son when she thought it might help him in his custody dispute with Ms. Harris's daughter. Defendant Darling lied to Plaintiff because it was the only way she knew that she could convince Plaintiff Harris to allow the conversations to be recorded.

Ms. Harris relied upon Defendant Darling's representations when she consented to having their therapy sessions recorded. If not for Ms. Darling's explicit promises, Ms. Harris would not have agreed to the recordings. As soon as it was beneficial for her to do so, Ms. Darling broke her promise and provided the recordings to her son, Defendant Kohlrautz. This damaged Plaintiff monetarily and irreparably. She is entitled to injunctive relief to prevent further dissemination of the recordings of their therapy sessions.

#### 4.1.4 Civil Extortion

The Supreme Court of Nevada has never explicitly recognized the tort of civil extortion; it has also never rejected it as a claim for relief. *See, e.g., Blige v. Terry*, 540 P.3d 421, 427 (Nev. 2023) ("We need not resolve whether a party may sue for an extortion tort in Nevada"). However, several Nevada state district courts, and even the Nevada Supreme Court itself, have treated it as a viable claim and/or allowed civil extortion claims to proceed. *See, e.g., Shapiro v. Welt*, 133 Nev. 35, 389 P.3d 262 (2017); *Havens v. Leong*, 2022 Nev. Dist. LEXIS 287 (E.D.C.R. Feb. 25, 2022); *Babico v. Raven*, 2021 Nev. Dist. LEXIS 927 (E.D.C.R. Aug. 20, 2021).

Nevada's sister-state of California has recognized a civil cause of action for extortion by importing the standards of its criminal extortion statute. Cal. Pen. Code §§ 519, 523. *See Flatley v. Mauro*, 39 Cal. 4th 299, 326-27 (Cal. 2006). Nevada has its own criminal extortion statute, NRS 205.320, and, as in California, there is no reason for Nevada courts to deny a plaintiff the ability to seek redress in civil actions for extortionate threats.

Using Nevada's criminal extortion statute as a guidepost, as the *Flatley* court did with California's statute, it is apparent that Plaintiff is likely to prevail on her extortion claim against Defendant Kohlrautz. NRS 205.320 provides, in pertinent part:

> A person who, with the intent to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property, or to influence the action of any public officer, or to do or abet or procure any illegal or wrongful act, whether or not the purpose is accomplished, threatens directly or indirectly … 4. To expose or impute to any person any deformity or disgrace; or 5. To expose any secret …

is guilty of extortion.

In this instance, Plaintiff Harris alleges under oath that Defendant Kohlrautz threatened to ruin her life unless Harris agreed to stop assisting her daughter in her daughter's custody dispute with Kohlrautz. Defendant Kohlrautz meant that he would release the recordings of Ms. Harris's therapy sessions to the public, and this is how Ms. Harris took his threat. This is a textbook extortionate threat. Defendant Kohlrautz has explicitly threatened to expose Ms. Harris's secrets and/or to impute disgrace upon her if she did not bend to his will. He specifically made these threats with the stated intent of forcing Ms. Harris to stop assisting her daughter in a court proceeding.

Mr. Kohlrautz is extorting Ms. Harris. She is likely to prevail on this claim. Ms. Harris respectfully requests that the Court grant her Motion and enjoin Mr. Kohlrautz from making her private therapy recordings public.

**4.2 Plaintiff will suffer irreparable harm absent injunctive relief**

Nevada courts consider harm irreparable "if it cannot adequately be remedied by compensatory damages." *Hamm v. Arrowcreek Homeowner's Ass'n.*, 124 Nev. 290, 297, 183 P.3d 895, 900-01 (2008). Damage to reputation is considered irreparable harm in the State of Nevada. *See Finkel v. Cashman Professional, Inc.*, 128 Nev. 68, 74, 270 P.3d 1259, 1263-64 (2012); *Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1081 (D. Nev. 2019). Injunctions are

an appropriate remedy for reputational harm if the plaintiff can show that it is "prospective in nature and … can be prevented through the issuance of injunctive relief." *Goldman v. Clark County Sch. Dist.*, 2019 Nev. Dist LEXIS 364, at *4 (E.D.C.R. Feb. 26, 2019).

The damage Defendants have threatened to do to Plaintiff's reputation is, thankfully, currently prospective in nature. However, Defendant Darling has already demonstrated that she is ready and willing to disregard her duty of confidentiality to Plaintiff by providing her confidential recordings of Plaintiff to her son. Defendant Kohlrautz has already, and without privilege, shared these recordings with at least one third party. He has additionally been using the recordings in order to manipulate and extort her by threatening to make them widely public if Plaintiff does not bend to his will and do what he says.

Injunctive relief is likely the only thing that can prevent Defendants from harming Plaintiff's reputation. If it does not issue, Plaintiff will be forced to either do what Defendants tell her to do or allow them to ruin her reputation and embarrass her in front of the world. Defendants have presented Plaintiff with a "heads we win, tails you lose" option, and immediate injunctive relief from this Court is Plaintiff's only remedy to prevent immediate, irreparable injury. She asks this Court to grant her Motion to prevent Defendants from exposing the private thoughts she shared in therapy sessions and ruining her reputation.

**4.3 The balance of the equities weighs in favor of issuing injunctive relief**

Injunctive relief can only be granted when the balance of equities favors the moving party. *See State Farm Mut. Auto Ins. Co. v. Jafbros, Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178 (1993). Here, the balance of the equities clearly favors Ms. Harris, who simply requests injunctive relief to prevent Defendants from making her private facts public. She clearly has a reasonable expectation that discussions with her therapist would remain confidential, particularly since Ms. Darling told her the recordings would be kept confidential and would not be disseminated to third parties. Notably, Ms. Darling has already breached that promise and disseminated the recordings to her son, Defendant Kohlrautz.

Defendants, on the other hand, will not be harmed at all if they are enjoined from disseminating these private recordings to the public. They will merely be prohibited from doing something that they have no right to do in the first place. Finally, the public is not served by Ms. Harris's private, confidential, and sensitive therapy sessions being made public. If anything, it may discourage third parties from seeking therapy due to the fear that their private information could also be made public if they do. It is in the public's interest to trust therapists and to see that therapists are held to a high standard, especially when it comes to their clients' secrets. Injunctive relief should issue.

**4.4 The bond required should be minimal**

Pursuant to NRCP 65(c), the court may only grant injunctive relief "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In this case, Defendants' damages in the event the Court finds the injunction was improperly granted would be minimal at best. Defendants would merely be prohibited from making recordings of Plaintiff's therapy sessions public, which will not cause them any real damage. The bond required should be minimal. Plaintiff requests and proposes that she post a bond for $100.00 for the issuance of the requested injunctive relief.

**4.5 *Ex parte* relief is essential**

Nevada Rule of Civil Procedure 65(b) allows courts to enter a temporary restraining order on an *ex parte* basis "if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." This rule is based upon Rule 65 of the Federal Rules of Civil Procedure. An *ex parte* order preserves the status quo and prevents irreparable harm. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

In this instance, *ex parte* relief is essential. By giving the recordings to her son, Ms. Darling has shown complete disregard for her obligations as a therapist and for her explicit promises to Ms. Harris. As soon as her son was in possession of the recordings, he immediately handed them over to a third party, then proceeded to use them to blackmail her into doing what he wants. Considering that both of them have demonstrated their willingness to treat the recordings unlawfully, and possibly illegally, Ms. Harris fears that they will immediately make them public as soon as they find out that she has sued them. Plaintiff thus asks this Court to issue an *ex parte* temporary restraining order enjoining Defendants from sharing the recordings immediately and without waiting for them to make an appearance. This is likely the only way to prevent Defendants from exacting misguided revenge upon her.

## 5.0 CONCLUSION

Defendants cannot be permitted to disseminate recordings of Plaintiff's therapy sessions more than they already have. This Court cannot condone therapists betraying the trust of their patients or allow blatant extortion to stand. The instant Motion should be granted, and Defendants should be enjoined from further dissemination of the recordings of Plaintiff's therapy sessions that are in their possession. They should also be required by the Court to destroy every copy they have of those therapy sessions to ensure that they do not distribute them further with no right to do so.

Dated: September 9, 2025

Respectfully submitted,

/s/ Ronald. D. Green

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Road, Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Angela Harris.