# Exhibit 7

Opposition to Motion to Dismiss
January 20, 2026

Electronically Filed
1/20/2026 3:10 PM
Steven D. Grierson
CLERK OF THE COURT

**OMD**

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Road, Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Angela Harris.

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ANGELA HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>TRACY DARLING, an individual; ALEXANDER KOHLRAUTZ, an individual; DOES 1 through 10; ROE CORPORATIONS 11-20;<br><br>Defendants. | Case No. A-25-927577-C<br><br>Dept. XIX<br><br>**OPPOSITION TO DEFENDANTS TRACY DARLING AND ALEXANDER KOHLRAUTZ'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT** |

Plaintiff Angela Harris opposes the Motion to Dismiss pursuant to NRCP 12(b)(2) and 12(b)(5) filed by Defendant Tracy Darling and the Motion to Dismiss pursuant to NRCP 12(b)(5) filed by Defendant Alexander Kohlrautz.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.0 INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Plaintiff Angela Harris is in Clark County, Nevada. *See* Amended Complaint, ¶ 1. Defendant Tracy Darling is in Tarrant County, Texas. She acted as Plaintiff Harris' therapist and is Defendant Alexander Kohlrautz's mother. *See id.*, ¶ 2. Defendant Alexander Kohlrautz is an

individual residing in Clark County, Nevada and is divorced from and has two children with Plaintiff Harris's daughter. *See id.*, ¶ 3.

Beginning in 2015, Tracy Darling began giving mental health counseling to Plaintiff. *See id.*, ¶ 9. Ms. Darling did not have a professional license, but she held herself out as a therapist and billed Plaintiff up to $175 per hour for her therapy services.[1] *See id.*, ¶ 10. Further, while Ms. Darling resided in Texas, she knew that Ms. Harris resided in Nevada when she offered and agreed to provide therapy services to Ms. Harris. *See* Declaration of Angela Harris ("Harris Decl."), ¶ 4. Ms. Darling additionally knew that Ms. Harris was physically present in Nevada while she provided her services to Ms. Harris. *See id.*, ¶ 5. Some of the therapy sessions that Ms. Darling provided to Ms. Harris were conducted in person in Clark County, Nevada during Ms. Darling's visits to Las Vegas. *See id.*, ¶ 6.

Ms. Darling promised that she would keep the details of the counseling sessions private and not disclose the contents or subjects of their discussions with third parties. Ms. Harris relied on these promises and provided Ms. Darling with confidential and sensitive information. *See* Amended Complaint, ¶ 11. For approximately two years, from 2015 to 2017, Ms. Harris engaged in unrecorded counseling sessions with Ms. Darling. *See id.*, ¶ 12.

In 2017, Ms. Harris' husband passed away, leaving her emotionally devastated and vulnerable. *See* Amended Complaint, ¶ 13. Plaintiff Harris additionally received the proceeds of a large life insurance payout upon her husband's death. Defendant Darling took advantage of Ms. Harris's vulnerable mental state to manipulate Ms. Harris into increasing the number and frequency of their therapy sessions. *See id.,* ¶ 14. Defendant Darling saw the large life insurance payout that Ms. Harris received as a way to enrich herself at Plaintiff Harris's expense, as Darling charged Ms. Harris up to $175 per hour for her services. *See id.*, ¶ 15.

---

[1] In the Motion to Dismiss filed by Defendant Alexander Kohlrautz, he alleges that "Plaintiff asserts she thought Darling was a 'licensed therapist.'" Kohlrautz Motion at 3. This is untrue. The Amended Complaint specifically discusses that Ms. Harris knew that Darling was not a licensed therapist. *See* Amended Complaint, ¶ 10.

As Defendant Darling convinced Ms. Harris to increase the frequency of their counseling sessions, she additionally encouraged Ms. Harris to allow her to record them. *See* Amended Complaint, ¶ 16. Ms. Darling represented that these recordings would allow her to provide more effective therapy sessions to Ms. Harris and be beneficial to Ms. Harris's recovery. *See id.* Ms. Darling explicitly promised Plaintiff Harris that the recordings of their sessions would remain confidential and that she would not share them with anyone. *See id.*, ¶ 17.

Due to Defendant Darling's explicit promises, Plaintiff Harris agreed to allow her to record the therapy sessions. *See* Amended Complaint, ¶ 18. Once Ms. Harris consented to Ms. Darling recording their therapy sessions, Defendant Darling used these sessions to foster Ms. Harris's dependency on Ms. Darling to cope with the death of her husband and to manipulate Ms. Harris into sharing deeply private and personal information with Ms. Darling, including information about childhood abuse that Ms. Harris suffered. *See id.*, ¶ 19. Ms. Harris trusted Defendant Darling, and Ms. Darling had promised her that what the two of them discussed would remain private and confidential. Moreover, while Ms. Darling did not have a professional license, Ms. Harris reasonably believed that therapists had a duty of confidentiality to their patients, and Darling led Harris to believe that she would adhere to this duty. *See id.*, ¶ 20. As a layperson, Ms. Harris did not have any way of knowing that an uncredentialed therapist would have any less obligation to adhere to a duty of confidentiality than a licensed one. *See id*. This is especially so when the uncredentialed therapist made such explicit representations to her.

In January 2025, Plaintiff Harris discovered that Tracy Darling gave recordings of their therapy sessions to Defendant Alexander Kohlrautz. *See* Amended Complaint, ¶ 21. Defendant Darling did not request, nor obtain, Ms. Harris's consent to share these recordings with Defendant Kohlrautz. Rather, Ms. Darling gave these recordings to Mr. Kohlrautz without Ms. Harris's permission or consent. *See id.*

Ms. Darling does not deny giving these recordings to Defendant Kohlrautz. In fact, she contends that she handed these recordings to Defendant Kohlrautz on a flash drive while Defendant

Kohlrautz was physically present in the State of Texas. *See* Defendant Tracy Darling's Motion to Dismiss ("Darling Motion") at 4. While Ms. Harris is unaware of whether this contention is true or false, it is undisputed that Ms. Darling gave these recordings to Mr. Kohlrautz so that he could use them against Ms. Harris in the State of Nevada. *See* Harris Decl., ¶ 7; Darling Motion at 10. In fact, Defendant Kohlrautz did use the recordings against Plaintiff Harris in the State of Nevada, as Defendant Darling intended. *See* Harris Decl., ¶ 8-9.

Ms. Darling shared these recordings with Mr. Kohlrautz for the purpose of embarrassing and injuring Plaintiff Angela Harris. Defendants also manipulated the recordings to create a deliberately misleading and selectively edited compilation that misrepresents Ms. Harris's words, beliefs, and character. *See* Amended Complaint, ¶ 22; Harris Decl., ¶ 10. Defendants Darling and Kohlrautz knew that Ms. Harris would suffer extreme emotional injury if the recordings were shared, and injuring Plaintiff is precisely what Defendants intended to do. *See* Amended Complaint, ¶ 23; Harris Decl., ¶ 11.

Once Defendant Kohlrautz was in possession of the recordings, he shared them with at least one third party without Ms. Harris's knowledge or consent. *See* Amended Complaint, ¶ 24. Before that time, Mr. Kohlrautz has repeatedly threatened Ms. Harris. Specifically, he has told her that he would "ruin" her and that he has information about her that could destroy her life. Defendant Kohlrautz's statements were intended to make Plaintiff Harris fear that he would release these recordings online to the general public to undermine, damage, and disrupt Ms. Harris' professional career, including her upcoming publications. *See* Amended Complaint, ¶ 25. Defendant Kohlrautz is currently engaged in a heated child custody battle with Plaintiff's daughter. Mr. Kohlrautz informed Plaintiff that she needed to stop assisting her daughter in the custody proceedings if she did not want him to ruin her reputation. *See* Amended Complaint, ¶ 26. Based upon Ms. Darling's and Mr. Kohlrautz's conduct, Plaintiff Harris has suffered extreme emotional distress. This distress has manifested in physical symptoms, including sleeplessness and insomnia, panic attacks, depression, and extreme anxiety. *See id.*, ¶ 27.

Despite Ms. Harris's well-pled claims, Defendants Darling and Kohlrautz ask this Court to dismiss the Amended Complaint. Ms. Darling contends that she is not subject to the personal jurisdiction of this Court. However, she entered into a contract to provide therapy services to a Nevada resident. She conducted and recorded those therapy sessions while Ms. Harris was in the State of Nevada. She gave those recordings to Defendant Kohlrautz to use against Ms. Harris and to injure Ms. Harris in the State of Nevada. Ms. Darling knew and intended that Mr. Kohlrautz would use those recordings against Ms. Harris in the State of Nevada. She intentionally caused harm to a Nevada resident while knowing the Nevada resident was present in Nevada. This Court has specific personal jurisdiction over her.

Both Darling and Kohlrautz ask this Court to dismiss the Amended Complaint for failure to state a claim. However, Ms. Harris's claims against Ms. Darling for promissory estoppel, fraudulent inducement, public disclosure of private facts, unjust enrichment, and intentional infliction of emotional distress and her claims against Mr. Kohlrautz for intentional infliction of emotional distress and civil extortion are properly pled.

Finally, both Defendants demand an evidentiary hearing. An evidentiary hearing is improper at this time. On a motion to dismiss, the Court only considers the allegations of the complaint, which it must accept as true. Moreover, Plaintiff is required to demonstrate a *prima facie* case of the Court's personal jurisdiction over Defendant Darling, which she has done. Defendants only demand an evidentiary hearing to further traumatize and embarrass Ms. Harris.

The Motions to Dismiss filed by Defendants Darling and Kohlrautz should be denied.

## 2.0 DARLING'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

### 2.1 Standard of Review

Nevada Rule of Civil Procedure 12(b)(2) provides for dismissal when the Court does not have personal jurisdiction over the defendant. Here, Defendant Darling has moved to dismiss the claims against her for lack of personal jurisdiction. Her contentions are meritless. The Court has jurisdiction over her, and the Motion should be denied.

A Nevada court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction over the defendant satisfies the requirements of Nevada's long-arm statute and does not offend due process. *See Consipio Holdings, BV v. Carlberg*, 128 Nev. 454, 458, 282 P.3d 751, 754 (2012). "Nevada's long-arm statute, NRS 14.065, reaches the constitutional limits of due process under the Fourteenth Amendment, which requires that the defendant have such minimum contacts with the state that the defendant could reasonably anticipate being haled into court here, thereby complying with traditional notions of fair play and substantial justice." *Viega GmbH v. Eighth Jud. Dist. Ct.*, 130 Nev 368, 374-75, 328 P.3d 1152, 1156 (2014). The district court "must accept properly supported proffers of evidence as true and resolve factual disputes in favor of the plaintiff." *Tik Tok, Inc. v. Eighth Jud. Dist. Ct.*, 578 P.3d 640, 647 (Nev. 2025).

**2.2 The Court has personal jurisdiction over Defendant Darling**

When the litigation is in the "pleading or motion stage, the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Tricarichi*, 440 P.3d at 649. A Nevada court possesses specific jurisdiction over a non-resident defendant where:

1. The non-resident defendant purposefully directs her activities or consummates some transaction with the forum or resident thereof; or performs some act by which she purposefully avails herself of the privilege of conducting activities in the forum, thereby invoking the protections and benefits of its laws;
2. The claim arises out of or relates to the defendant's forum-related activities; and
3. The exercise of jurisdiction comports with fair play and substantial justice (i.e., it is reasonable).

*See Catholic Diocese of Green Bay, Inc. v. Doe*, 131 Nev. 246, 249-50, 349 P.3d 518, 520-21 (2015). Whether the forum state may assert specific personal jurisdiction over a nonresident defendant focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (internal citations omitted). When the "defendant's

suit-related conduct" creates a substantial connection with the forum state, due process is satisfied. *Id.* at 284.

Defendant Darling has purposefully availed herself of the privilege of conducting activities in Nevada and has purposefully directed her activities at the forum, as alleged in the Amended Complaint. Plaintiff's claims relate to and arise out of Ms. Darling's forum-related activities. Finally, exercising personal jurisdiction over her in this case is reasonable and foreseeable to Tracy Darling. Personal jurisdiction over her exists in this case. Ms. Darling's Motion to Dismiss for lack of personal jurisdiction should be denied.

#### 2.2.1 Purposeful availment and purposeful direction

Purposeful availment occurs when the defendant "purposefully directs her conduct towards Nevada." *Dogra v. Liles*, 129 Nev. 932, 937, 314 P.3d 952, 955 (2013). Purposeful direction exists when the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state; (3) causing harm that defendant knows is likely to be suffered in the forum state." *Tricarichi*, 440 P.3d at 650, citing *Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015).

Here, Defendant Tracy Darling committed two intentional acts that subject her to this Court's jurisdiction. First, she engaged as a therapist for Angela Harris, a Nevada resident. *See* Harris Decl., ¶ 4. Ms. Darling knew that she was providing therapy services to a Nevada resident and that the Nevada resident was physically located in the State of Nevada when she agreed to engage as a therapist and when she actually provided the therapy services. *See id.*, ¶ 5. In fact, some of Ms. Harris's therapy sessions with Ms. Darling were conducted in-person while Ms. Darling was physically present in Clark County, Nevada. *See id.*, ¶ 6. Ms. Darling can not seriously claim a lack of jurisdiction when she physically came to Nevada, sat down in Nevada with a Nevada resident and provided ongoing services to that Nevada resident.

Ms. Darling also gave recordings of therapy sessions to Alexander Kohlrautz, a Nevada resident, so that Mr. Kohlrautz could use them against Ms. Harris and her daughter in Nevada, intending to injure Ms. Harris and her daughter in the State of Nevada. *See* Harris Decl., ¶¶ 7-8.

It is disingenuous for Ms. Darling to argue that her acts were not connected to the State of Nevada; her conduct connects her to Nevada in a meaningful way. *See Tricarichi*, 440 P.3d at 651-52. Not only did Harris suffer injury in the state, but Darling's tortious conduct was specifically directed at the state.

Ms. Darling's conduct was clearly aimed directly at the State of Nevada. Plaintiff Harris and Defendant Kohlrautz live in Nevada. Defendant Darling knew that Ms. Harris lived in Nevada when she provided therapy services to her, and she knew that Defendant Kohlrautz lived in Nevada when she gave recordings of Ms. Harris's therapy sessions to him. She gave the recordings to Mr. Kohlrautz for the express purposes of having them used in Nevada and harming Ms. Harris in Nevada. There is simply no cognizable argument that her conduct was not directed at the State of Nevada.

#### 2.2.2 Defendant's forum-related activities

Ms. Harris's claims clearly relate to Ms. Darling's forum-related activities. Specifically, they relate to her contracting with a Nevada resident to provide therapy services to her; providing therapy to a Nevada resident; recording those therapy sessions with a Nevada resident; and to her providing those recordings to Mr. Kohlrautz, a Nevada resident, to use against Ms. Harris in the State of Nevada. The claims are not tangential to the State of Nevada. Every single action that Ms. Darling took was expressly aimed at the State of Nevada. Moreover, she knew that her actions would solely affect Nevada residents, specifically Ms. Harris and Mr. Kohlrautz, and solely damage Ms. Harris, a Nevada resident, in the State of Nevada.

#### 2.2.3 Reasonableness

Exercising personal jurisdiction over Defendant Darling in this case would be reasonable. In determining whether it is reasonable to exercise specific personal jurisdiction, Nevada courts examine: "(1) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (2) forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interest of the several states in furthering

substantive social policies." *Trump*, 109 Nev. at 701, citing *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 292 (1980). An analysis of these factors demonstrates that Nevada is, by far, the most efficient and most proper state to hear this dispute.

All of the relevant facts occurred here or were directed at the State of Nevada. Ms. Harris's injuries occurred here. The vast majority of the witnesses are located here. In fact, the only essential witness that is not located in Nevada is likely Ms. Darling herself. Nevada also has the strongest interest in resolving this dispute for precisely the same reasons. Nevada has a strong interest in protecting its citizens. There is no state more closely tied to this dispute than Nevada.

Moreover, Ms. Darling should have expected to be haled into court in Nevada when she (1) provided therapy services to a Nevada resident (including in person in Nevada); (2) recorded the therapy sessions of a Nevada resident; and (3) provided those recordings to another Nevada resident for use in the State of Nevada.

It is disingenuous for Ms. Darling to argue there is no personal jurisdiction over her. This is evidenced by her insistence that the Court hold an evidentiary hearing to play the recordings of Ms. Harris's therapy sessions and make them part of the public record, despite such recordings having nothing to do with Darling's 12(b)(2) motion. Defendants are attempting to punish and embarrass Ms. Harris for bringing this lawsuit against them, and wish to place Ms. Harris' intimate thoughts into the public record as nothing more than a cynical abuse of the litigation process. Ms. Darling is additionally attempting to place a burden upon Ms. Harris that the law does not. Ms. Harris is required to provide *prima facie* evidence of personal jurisdiction and has done so. This Court should not take Ms. Darling's bait. The recordings of the therapy sessions are extremely sensitive to Ms. Harris, and Defendants are seeking to exploit her once again.

While an evidentiary hearing is not necessary and is only being suggested to further traumatize Ms. Harris, if the Court finds that one should occur, Plaintiff respectfully requests that it be conducted under seal and away from the public. Defendants cannot be permitted to punish Angela Harris for taking affirmative steps to end their harassment and humiliation of her.

## 3.0 DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(5)

### 3.1 Standard of Review

This Court should not grant a motion to dismiss pursuant to NRCP 12(b)(5) unless it appears that the plaintiff can prove no set of facts that, even accepted as true, that would make out a claim for relief. *See Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008); *Blackjack Bonding v. City of Las Vegas Mun. Ct.*, 116 Nev. 1213, 1217, 14 P.3d 1275, 1278 (2000). The trial court must "construe the pleading liberally and draw every fair intendment in favor of the plaintiff." *Brown v. Kellar*, 97 Nev. 582, 583, 636 P.2d 874, 874 (1981). The "allegations in the complaint must be accepted as true." *Id.*

Throughout the Motions filed by Darling and Kohlrautz, they attempt to hold Ms. Harris to the wrong standard. For instance, they continually demand an evidentiary hearing and demand that Plaintiff Harris provide "proof" regarding her claims. However, this case is still in its infancy. Motions to dismiss do not examine proof. The Court is required to accept the facts laid out in the Amended Complaint as true. Moreover, the court may not consider matters outside the pleading being attacked, which Defendants improperly demand of the Court. *See Engelson v. Dignity Health*, 542 P.3d 430, 436 (Nev. App. 2023), citing *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993).

### 3.2 Defendant Darling provides no argument regarding promissory estoppel

Defendant Darling's Motion to Dismiss contains a point heading entitled "Plaintiff Fails to State a Claim for Fraudulent Inducement and Promissory Estoppel." Darling Motion at 14. However, the argument that falls under this point heading contains no analysis of the promissory estoppel claim whatsoever. *See id.* at 14-16. It is solely about fraudulent inducement. Defendant Darling has thus not moved to dismiss the promissory estoppel claim, has provided the Court with no reason to dismiss the promissory estopped claim, and has conceded that Plaintiff's promissory estoppel claim is valid and should not be dismissed. *See* EDCR 2.20(c) (providing that failure to

submit memorandum of points and authorities "may be construed as an admission that the motion is not meritorious, as cause for its denial or as a waiver of all grounds not so supported").

**3.3 The fraudulent inducement claim is valid**

Plaintiff Harris's fraudulent inducement claim is properly pled. Defendant Darling accurately states the elements of a fraudulent inducement claim. *See* Darling Motion at 14-15, citing *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 290, 89 P.3d 1009, 1018 (2004). However, that is where the accuracy of Ms. Darling's analysis and argument ends.

First, Ms. Darling (seemingly intentionally) misconstrues the basis of Ms. Harris's claim, stating that "Plaintiff's assertion is that over a decade ago, Darling devised some form of plan to 'encourage' Plaintiff to allow recordings of their 'sessions' only to hold those recordings for use in a child custody proceeding which was not in existence at the time of the recordings." Motion at 15. Of course, Plaintiff does not allege that Ms. Darling anticipated that a custody dispute between her child and Ms. Harris's child would arise a decade after she promised Ms. Harris that she would not share recordings of their therapy sessions with anyone. Rather, Plaintiff Harris alleges that Ms. Darling never intended to keep the recordings secret and knew that she would release them if she ever deemed it beneficial to do so. *See generally* Amended Complaint, Third Claim for Relief. While Ms. Harris does not believe it necessary, if the Court wishes Ms. Harris to amend her Amended Complaint to explicitly state this, she is willing to do so.

Defendant Darling additionally and falsely accuses Ms. Harris of providing "factual allegations to support the alleged fraud claim [that] are nothing short of conclusory and fail to provide any of the particularity required under NRCP 9(b)." Darling Motion at 15. Specifically, Ms. Darling argues that Ms. Harris fails to:

- State what the misrepresentations were with "any factual specificity." *Id.* However, Ms. Harris explicitly pleads that Ms. Darling "convinced Ms. Harris to allow her to record their therapy sessions" and that she "promised Ms. Harris that the recordings of their sessions would remain confidential and that she would not

share them with anyone." Amended Complaint at ¶¶ 16-17. Plaintiff is unsure what additional specificity Ms. Darling wants.

- Provide any "evidence of money paid by Plaintiff to Darling" or place, "date, amount, or method of the purported payments." Darling Motion at 15. However, Ms. Harris alleges that Defendant Darling charged her up to "$175 per hour for the therapy sessions." Amended Complaint at ¶ 18. She alleges that she was charged that amount for each session with Defendant Darling. *See id.*, ¶ 10. Ms. Harris does not see how providing the "method" of the alleged payments or the "place" where the misrepresentations were made would assist her in responding to this claim. However, if Defendant Darling insists upon it and the Court agrees with her, Ms. Harris is willing to amend to provide this information.

Finally, Defendant Darling alleges that Angela Harris has failed to "allege some misconduct independent of the breach" of contract, which is required to maintain a fraudulent inducement claim. Darling Motion at 15, quoting *Shelton v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 169321, at *24 (S.D. Cal. Sept. 30, 2019). However, the very case Ms. Darling cites demonstrates that she is incorrect. If the plaintiff alleges that the defendant acted "wrongfully, either negligently, intentionally, or fraudulently," then the "misconduct independent of the breach" requirement is satisfied. *Id.* at *24. Here, Ms. Harris alleges that Ms. Darling's representations were false when they were made, evidencing intentional wrongdoing on her part.[2] *See* Amended Complaint, ¶ 46.

Plaintiff's fraudulent inducement claim is valid.

[2] Ms. Darling also cites a negligent misrepresentation case dealing with future performance that is simply inapplicable to this case and should be disregarded. *See* Darling Motion at 15, citing *McAteer v. Sunflower Bank, N.A.*, 2021 U.S. Dist. LEXIS 183142, at *13-14 (D. Nev. Sept. 24, 2021). She also cites a case stating that, in cases with "purely economic losses," the economic loss rule precludes recovery on a fraud claim. *See* Darling Motion at 15-16, citing *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868. F. Supp. 2d 983, 991-92 (E.D. Cal. 2012). However, this is clearly not a case involving "purely economic loss," as evidenced by the preliminary injunction granted by the Court at the outset of the case. This citation should also be disregarded.

**3.4 Harris has stated a claim for public disclosure of private facts**

Plaintiff Harris has asserted a claim against Defendant Darling for public disclosure of private facts. To maintain this cause of action, she must allege that "a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *Montesano v. Donrey Media Grp.*, 99 Nev. 644, 649, 668 P.2d 1081, 1084 (1983). The only challenge Ms. Darling makes to this claim is to allege that she only disseminated Ms. Harris's private information, received during therapy sessions, to one person – her son, Alexander Kohlrautz. *See* Darling Motion at 13.

However, "disclosure to one person may, based on the facts and circumstances in a particular case, satisfy the publicity element." *Z.D. v. Cmty. Health Network, Inc.*, 217 N.E.3d 527, 536 (Ind. 2023), citing *Karch v. BayBank FSB*, 794 A.2d 763, 774 (N.H. 2002); *Shattuck-Owen v. Snowbird Corp.*, 16 P.3d 555, 559 (Utah 2000); *Robert C. Ozer P.C. v. Borquez*, 940 P.2d 371, 377 n.7 (Colo. 1997). In the *Z.D.* case, the defendant's employee misaddressed an envelope containing the plaintiff's private health information. It was undisputed that the misaddressed envelope only reached one household. *See Z.D.*, 217 N.E.3d at 536. However, at summary judgment, the defendant could not demonstrate that the employee who sent the envelope did not intend for it to be publicly disseminated or that the recipient did not intend to make it public. *See id.* at 536-37. Therefore, summary judgment was denied, and the claim survived.

Here, Defendant Darling gave recordings of Plaintiff Harris' therapy sessions to Defendant Kohlrautz with knowledge that he would disseminate them. *See* Amended Complaint at ¶¶ 21-23. She intended for him to disseminate them because she wanted to injure Ms. Harris. *See id.*, ¶ 23. That Ms. Darling disseminated Ms. Harris' private information to one person is immaterial. For the claim to be dismissed, she would need to demonstrate that she did not disclose Ms. Harris private information "in a way that it would reach a large enough number of people such that the information was sure to become public knowledge." *Z.D.*, 217 N.E.3d at 536.

Ms. Darling cannot meet that burden. She *intended* to disseminate Ms. Harris private information in such a way that it would become public knowledge. This claim should not be dismissed, and the Motion should be denied.

**3.5 The unjust enrichment claim is timely**

Defendant Darling asserts that Ms. Harris's unjust enrichment claim should be dismissed for falling outside the statute of limitations. Ms. Darling is wrong and her Motion should be denied.

Plaintiff Harris has asserted a timely unjust enrichment claim. Plaintiff acknowledges that the statute of limitations for an unjust enrichment claim is four years pursuant to NRS 11.190(2)(c). *See* Darling Motion at 14. She additionally acknowledges her therapy sessions with Ms. Darling began in 2015. *Id.* However, those sessions did not end in 2017, as Ms. Darling alleges. *See id.* That is when Ms. Harris' husband passed away. *See* Amended Complaint, ¶ 13. The therapy sessions continued well past 2017. Moreover, the unjust enrichment claim did not begin to accrue in the time between 2015 to 2017, as asserted by Ms. Darling. *See id.*

In Nevada, the "general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990). Nevada also follows the "discovery rule," which tolls the statute of limitation "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.*

Here, Plaintiff's claim did not accrue when Darling accepted money from Ms. Harris in exchange for Defendant Darling's promise not to disclose recordings of their therapy sessions. Rather, the claim accrued when Defendant Darling breached her promise to keep the recordings confidential. Amended Complaint, ¶ 63. This either occurred in January 2025 or was discovered by Plaintiff Harris in January 2025. *See id.*, ¶ 21.

Plaintiff's claim for unjust enrichment accrued a mere eight months before she asserted it, easily satisfying the four-year statute of limitations. Plaintiff Harris's unjust enrichment claim is timely. Tracy Darling's Motion to Dismiss should be denied.

### 3.6 Both Defendants are liable for intentional infliction of emotional distress

Contrary to the arguments of both Defendants, they are liable to Ms. Harris for intentional infliction of emotional distress. The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme emotional distress, and (3) actual or proximate causation. *See Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (1981). Both Tracy Darling and Alexander Kohlrautz are responsible for intentionally inflicting emotional distress upon Plaintiff Angela Harris.

First, both Defendants engaged in extreme and outrageous conduct. In Nevada, extreme and outrageous conduct is defined as conduct that is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-a-Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998). With regard to Defendant Tracy Darling, she offered to do therapy work for Plaintiff Angela Harris. *See* Amended Complaint, ¶¶ 9-10. She encouraged Ms. Harris to allow her to record the therapy sessions. *See id.*, ¶ 16. She promised she would keep those sessions, and the matters discussed, confidential. *See id.*, ¶¶ 11, 17. Due to the promises made by Ms. Darling, Plaintiff Harris discussed confidential and sensitive information with her, including information about childhood abuse that Ms. Harris suffered. *See id.*, ¶¶ 11, 19.

When it became advantageous to Ms. Darling to do so, she provided recordings of those therapy sessions to Defendant Kohlrautz. Ms. Darling apparently does not believe that an unlicensed therapist violating her duty of confidentiality to a patient is "extreme and outrageous conduct," but Ms. Harris begs to differ. Ms. Darling herself quotes a case that states "[e]xtreme and outrageous conduct also 'may arise from an abuse by the actor of [her] position.'" Darling Motion at 16-17, quoting *Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009). In this instance, Defendant Darling clearly abused her position as Ms. Harris unlicensed therapist. Not only did she have a duty to keep Ms. Harris' sessions confidential, but she explicitly promised that she would do so.

With regard to Defendant Kohlrautz, he relies upon case law that "vague threats" "do not rise to the level of extreme and outrageous activity in Nevada." Defendant Alexander Kohlrautz Motion to Dismiss ("Kohlrautz Motion") at 7, citing *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992)). First, Plaintiff Harris disputes that Kohlrautz telling her "that he would 'ruin' her" or that he had "information that could destroy her life" is a "vague threat." Amended Complaint, ¶ 25. Moreover, Mr. Kohlrautz went beyond the act of making threats.

His disclosure of the recordings to the Clark County Family Court may have been privileged.[3] However, it demonstrated to Plaintiff Harris that he was willing and ready to publicly release information about her that he thought would "ruin" her life. He made extreme and outrageous threats to Plaintiff Harris, then demonstrated to her that he was ready and willing to back them up.

Plaintiff Harris has also alleged that she suffered severe or extreme emotional distress. Both Darling and Kohlrautz falsely argue that Plaintiff Harris is required to demonstrate "physical injury to maintain the claim." *See* Darling Motion at 17; Kohlrautz Motion at 9. However, this is untrue. The Supreme Court of Nevada has explicitly stated that "an intentional infliction of emotional distress claim ***does not require a physical injury***." *Sadler v. PacifiCare of Nevada, Inc.*, 130 Nev. 990, 996-97, 340 P.3d 1264, 1268-69 (2014) (emphasis added).

When conduct is sufficiently extreme, Plaintiff is not required to show more than insomnia, extreme fear, and anxiety. *See Blige v. Terry*, 540 P.3d 421, 432 (Nev. 2023). Defendants' conduct here was significantly extreme. Plaintiff realizes that Defendants disagree, but even they quoted language in Mr. Kohlrautz's Motion that "where reasonable people may differ, the jury [must determine] whether the conduct was extreme and outrageous enough to result in liability." Kohlrautz Motion at 8, quoting *Refai*, 614 F. Supp. 2d at 1122.

---

[3] Harris does not concede that such disclosure actually was privileged, but an argument for privilege exists and Harris does not premise liability on this disclosure.

Plaintiff has sufficiently pled a claim for intentional infliction of emotional distress. Defendants cite caselaw indicating that she has provided enough to take this claim to a jury. The Motions to Dismiss should be denied.

**3.7 Kohlrautz is responsible for civil extortion**

Finally, Plaintiff asserts a claim against Defendant Kohlrautz for civil extortion. Mr. Kohlrautz argues that "[e]xtortion is a criminal act without a private civil right of action" and that "[e]very court within Nevada who has addressed whether 'civil extortion' is an actionable claim in Nevada has determined it is not." Kohlrautz Motion at 5. This is wrong.

To begin, the first sentence in Plaintiff Harris's civil extortion argument in her Motion for Preliminary Injunction acknowledges that "[t]he Supreme Court of Nevada has never explicitly recognized the tort of civil extortion; it has also never rejected it as a claim for relief." Motion for Preliminary Injunction at 10, citing *Terry*, 540 P.3d at 427 ("We need not resolve whether a party may sue for an extortion tort in Nevada"). However, several Nevada state district courts, and even the Nevada Supreme Court, have treated it as a viable claim and/or allowed civil extortion claims to proceed. *See, e.g., Shapiro v. Welt*, 133 Nev. 35, 389 P.3d 262 (2017); *Babico v. Raven*, 2021 Nev. Dist. Dist. LEXIS 927 (E.D.C.R. Aug. 20, 2021); Notice of Entry of Order Denying Motion to Dismiss in *Uzmann v. Nery*, Case No. A-16-734080-C, Eighth Judicial District Court, Clark County, Nevada (June 9, 2016), attached hereto as **Exhibit 1** (holding that "the State of Nevada likely recognizes a cause of action for civil extortion").[4]

Nevada's sister-state of California has recognized a civil cause of action for extortion by importing the standards of its criminal extortion statute. Cal. Pen. Code §§ 519, 523. *See Flatley v. Mauro*, 39 Cal. 4th 299, 326-27 (Cal. 2006) (ruling on a special motion to strike a civil extortion claim); *see also Malin v. Singer*, 217 Cal. App. 4th 1283, 1301-1302 (2013) (addressing merits of

[4] Defendant Kohlrautz cites cases from the U.S. District Court for the District of Nevada that held that Nevada's extortion statute does not provide a civil remedy, but none of the cases contain any analysis, and Plaintiff submits that decisions from Nevada's state courts are more competent to determine whether a civil claim based wholly on state law exists.

civil extortion claim). Nevada has its own criminal extortion statute, NRS 205.320, and, as in California, there is no reason for Nevada courts to deny a plaintiff the ability to seek redress in civil actions for extortionate threats.

Using Nevada's criminal extortion statute as a guidepost, as the *Flatley* court did with California's statute, it is apparent that Plaintiff is likely to prevail on her extortion claim against Defendant Kohlrautz. NRS 205.320 provides, in pertinent part:

> A person who, with the intent to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property, or to influence the action of any public officer, or to do or abet or procure any illegal or wrongful act, whether or not the purpose is accomplished, threatens directly or indirectly … 4. To expose or impute to any person any deformity or disgrace; or 5. To expose any secret …

is guilty of extortion.

In this instance, Plaintiff Harris alleges under oath that Defendant Kohlrautz threatened to ruin her life unless Harris agreed to stop assisting her daughter in her daughter's custody dispute with Kohlrautz. Defendant Kohlrautz meant that he would release the recordings of Ms. Harris's therapy sessions to the public, and this is how Ms. Harris took his threat. This is textbook extortion. Defendant Kohlrautz has explicitly threatened to expose Ms. Harris's secrets and/or to impute disgrace upon her if she did not bend to his will. He specifically made these threats with the stated intent of forcing Ms. Harris to stop assisting her daughter in a court proceeding.

Given that several Nevada courts have allowed civil extortion claims to proceed and that Mr. Kohlrautz's conduct constitutes textbook extortion, there is no reason to dismiss Ms. Harris's claim. It should be permitted to proceed. His Motion to Dismiss should be denied.

## 4.0 CONCLUSION

The Motions to Dismiss filed by Defendants Tracy Darling and Alexander Kohlrautz must be denied. First, this Court clearly has personal jurisdiction over Ms. Darling. Additionally, Ms.

Harris's claims for relief against Ms. Darling and Mr. Kohlrautz are properly pled and should not be dismissed for failure to state a claim.

Dated: January 20, 2026.

Respectfully submitted,

/s/ Ronald D. Green
Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Road, Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Angela Harris

Case No. A-25-927577-C

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically filed on this 20th day of January, 2026 and served via the Eighth Judicial District Court's Odyssey electronic filing system.

/s/ Ronald D. Green
RONALD D. GREEN

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ANGELA HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>TRACY DARLING, an individual; ALEXANDER KOHLRAUTZ, an individual; DOES 1 through 10; ROE CORPORATIONS 11-20;<br><br>Defendants. | Case No. A-25-927577-C<br><br>Dept. XIX<br><br>**DECLARATION OF ANGELA HARRIS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

I, Angela Harris, declare:

1. I am over the age of 18 and have never been convicted of a crime involving fraud or dishonesty. I have knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2. I am the Plaintiff in the above-captioned action.

3. I am submitting this Declaration in support of the Opposition to Defendants Tracy Darling's and Alexander Kohlrautz's Motions to Dismiss First Amended Complaint.

4. In the beginning of 2015, I began engaging in mental health counseling with Defendant Tracy Darling. Although Darling was not a licensed psychology professional, she presented herself as a therapist and billed me up to $175 an hour for her therapy services. While Darling resided in Texas, she knew that I resided in Nevada when she offered and agreed to provide me with therapy services.

5. Darling knew that I was physically present in Nevada while she was providing me with therapy services.



Doc ID: 70f9ea59c4e1a89d4735e63720982b2391ea6df3

6. Some of the therapy sessions that I had with Darling were conducted in person in Clark County, Nevada whenever she visited Las Vegas. I do not believe that Ms. Darling recorded any of our therapy sessions while she was physically present in Nevada.

7. In January 2025, I discovered that Defendant Darling provided her son, Defendant Alexander Kohlrautz, with a copy of the recordings of our therapy sessions without my permission or consent.

8. Darling provided the recordings to Kohlrautz to use against me and my daughter in the State of Nevada, intending to injure and embarrass us.

9. Defendant Kohlrautz did use the recordings against me in the State of Nevada.

10. Kohlrautz and Darling manipulated the recordings by creating a deliberately misleading and selectively edited compilation, misrepresenting my words, belief, and character.

11. Kohlrautz and Darling knew that if the recordings were shared, me and my daughter would suffer extreme emotional injury, and that is what they intended.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: . 01 / 20 / 2026

[signature]

Angela Harris



Doc ID: 70f9ea59c4e1a89d4735e63720982b2391ea6df3