Clayton L. Everett, Texas State Bar No. 24065212
NORRED LAW, PLLC | 515 E. Border Street | Arlington, Texas 76010
Phone: (817) 704-3984 | clayton@norredlaw.com
Counsel for Defendants

# United States Bankruptcy Court

Northern District of Texas
Fort Worth Division

| | |
|---|---|
| In re: Wayne Alan Darling and<br>Tracy Ellen O'Reilly Darling,<br>Debtor(s), | Case No. 26-42672-elm7 |
| Angela Harris<br>Plaintiff(s), | Chapter 7 |
| vs.<br>Tracy Ellen O'Reilly Darling, et al.,<br>Defendant(s) | Adversary No. 26-04122-elm |

## DEFENDANTS' PARTIAL MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants Tracy Ellen O'Reilly Darling ("Tracy Darling") and Wayne Alan Darling ("Wayne Darling") move under Rules 12(b)(6) and, alternatively, 12(f), applicable here through Bankruptcy Rule 7012(b), to dismiss in part Plaintiff Angela Harris's Complaint (ECF No. 1). The Motion is directed at (1) the § 523(a)(4) and (a)(6) claims in Claims I, II, and IV, and (2) every request for monetary relief against Wayne Darling. Defendants answer Claims III and V separately.

## I. SUMMARY OF ARGUMENT

The Complaint asks the Court to except from Tracy Darling's discharge an unliquidated, unadjudicated claim pending in a Nevada state court. Each of Claims I, II, and IV restates a count from Harris's Nevada pleading and adds two conclusions: that Tracy Darling "acted in a fiduciary capacity," and that her conduct was "a willful and malicious injury." Neither conclusion is supported by pleaded facts, and Harris's own exhibits, which she incorporated into the Complaint, defeat both.

*Section 523(a)(4).* In the Fifth Circuit, "fiduciary capacity" means a technical or express trust that existed before, and independent of, the alleged wrong. Harris has sworn that Tracy Darling was unlicensed and that their arrangement was an oral agreement for paid sessions. A promise of confidentiality made within an informal oral arrangement is not a trust, and no amendment can change the facts Harris has already verified.

*Section 523(a)(6).* A willful and malicious injury requires a deliberate injury, not merely a deliberate act. Harris's incorporated pleadings concede that Tracy Darling "likely did not know how she would use the recordings in the future," that she shared them with her son "when she thought it might help him in his custody dispute," and that the only identified use of the recordings, in a family court, "may have been privileged" and is not a basis of liability. Conclusory allegations of intent to injure cannot survive those concessions. Claim II also fails Rule 9(b). And Claims I and IV, which seek reliance damages for a broken promise and restitution of fees voluntarily paid, do not allege an injury of the kind § 523(a)(6) reaches.

*Wayne Darling.* Claims I through IV are pleaded against Tracy Darling alone, and Claim V seeks only denial of discharge. Yet the Prayer seeks damages and a declaration of nondischargeable debts against "Debtors." Nothing in the Complaint supports any monetary relief against Wayne Darling.

## II. THE COMPLAINT AND ITS INCORPORATED EXHIBITS

For purposes of this Motion only, Defendants accept the Complaint's well-pleaded factual allegations as true; Defendants deny them. The Complaint attaches and incorporates by reference eight exhibits from the Nevada litigation, including Harris's verified Second Amended Complaint ("Ex. 1"), her motion for a temporary restraining order ("Ex. 3"), and her opposition to the Nevada motions to dismiss with her supporting declaration ("Ex. 7"). Compl. ¶¶ 7, 10.

Those exhibits are part of the Complaint for all purposes. Fed. R. Civ. P. 10(c); Fed. R. Bankr. P. 7010.

**A. Harris's allegations.**

Harris alleges that she began "mental health counseling" with Tracy Darling in 2015; that Tracy Darling "was not a licensed psychology professional" but "held herself out as a therapist and billed" Harris up to $175 per hour; and that Tracy Darling promised to keep their sessions private. Ex. 1 ¶¶ 9, 11–12. Harris has emphasized that she knew Tracy Darling was unlicensed. Ex. 7 at 2 n.1. After Harris's husband died in 2017, Tracy Darling allegedly encouraged Harris "to modify their oral agreement for a therapist/patient relationship" by increasing the frequency of sessions and allowing them to be recorded, under an "explicit promise" not to share the recordings. Compl. ¶¶ 34, 36; Ex. 1 ¶¶ 17–18, 44.

In January 2025, Harris "discovered" that Tracy Darling had shared recordings with her son, Alexander Kohlrautz. Ex. 1 ¶ 24. Harris's own filings state why: Tracy Darling "shared the recordings with her son when she thought it might help him in his custody dispute with Ms. Harris's daughter." Ex. 3 at 10. Harris's counsel told the Nevada court that the son's disclosure "to the Clark County Family Court may have been privileged" and that Harris "does not premise liability on this disclosure." Ex. 7 at 16 n.3. As to Tracy Darling's intent when the recordings were made, Harris's verified pleading states that "Ms. Darling likely did not know how she would use the recordings in the future," while asserting that she intended to have recordings that "could" embarrass Harris or provide "leverage" over her "at some future date." Ex. 1 ¶ 22.

**B. The counts.**

Claims I, II, and IV are each captioned "Against Defendant Tracy Ellen O'Reilly Darling." Each restates a Nevada count and adds the identical sentence: "At all relevant times, Darling acted in a fiduciary capacity." Compl. ¶¶ 24, 35, 60. Each then concludes that the

conduct was fraud "while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4)" and "a willful and malicious injury under 11 U.S.C. § 523(a)(6)." *Id.* ¶¶ 30–31, 43–44, 65–66. No other allegation addresses either statute. Claim V, under § 727(a)(5), is the only claim pleaded against both Defendants. The Prayer nevertheless asks for "actual, presumed, and punitive damages," costs and fees, and a decree that "all debts determined to be owing by Debtors to Plaintiff" are nondischargeable. *Id.* at 11, ¶¶ A, B, D.

## III. LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are not entitled to the presumption of truth. *Id.* The Court considers the complaint and the documents attached to it, and where an attached exhibit contradicts an allegation, the exhibit controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

Allegations of fraud must be stated with particularity, Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009, which requires the who, what, when, where, and how of the alleged fraud. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Intent may be alleged generally, but that does not permit conclusory allegations; Rule 9(b) does not give a plaintiff "license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87.

Exceptions to discharge "should be confined to those plainly expressed." *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)). The creditor bears the burden of proving each element. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

## IV. ARGUMENT

### A. The § 523(a)(4) claims in Claims I, II, and IV fail because Tracy Darling was not acting "in a fiduciary capacity."

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Claims I, II, and IV invoke only the first clause. Compl. ¶¶ 30, 43, 65.

#### 1. "Fiduciary capacity" is limited to technical trusts that pre-exist the wrong.

For nearly two centuries the Supreme Court has read the fiduciary exception to reach only technical trusts, not trusts implied by contract or imposed because of the wrong itself. *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 208 (1844); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934). The Fifth Circuit applies that rule: the exception reaches technical, express, or statutory trusts, and the trust relationship must exist before, and without reference to, the act creating the debt. *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338–39 (5th Cir. 1980); *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342–43 (5th Cir. 1998). Whether a relationship meets that standard is a question of federal law, informed by state law. *In re Tran*, 151 F.3d at 342; *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993). The broader, everyday sense of "fiduciary"—a relationship of trust and confidence—does not suffice. *See In re Angelle*, 610 F.2d at 1338–39.

#### 2. The Complaint pleads a label, not a trust.

The only allegation directed at this element is the sentence, repeated verbatim three times, that "Darling acted in a fiduciary capacity." Compl. ¶¶ 24, 35, 60. That is a legal conclusion the Court does not credit. *Iqbal*, 556 U.S. at 678. The Complaint identifies no trust instrument, no statute creating a trust, no res held in trust, and no trust duties. It does not say what property Tracy Darling held for Harris or when any trust arose.

**3. Harris's verified allegations affirmatively negate a technical trust.**

Harris has not merely omitted the necessary facts; she has pleaded facts that exclude them. She alleges an "oral agreement for a therapist/patient relationship" under which she paid for sessions. Compl. ¶ 34; Ex. 1 ¶¶ 11, 44. She alleges that Tracy Darling was unlicensed, and stresses that she knew it. Ex. 1 ¶¶ 11, 21; Ex. 7 at 2 n.1. The money she paid was compensation for services, which became Tracy Darling's property when paid, not a res held for Harris's benefit. Ex. 1 ¶¶ 11, 16, 19. And the "explicit promise" of confidentiality, Compl. ¶ 36, is at most a term of that oral arrangement. A contractual promise, even one that reposes trust and confidence, does not create a technical trust. *See Davis*, 293 U.S. at 333; *In re Angelle*, 610 F.2d at 1339. Harris herself acknowledged to the Nevada court that any statutory duty of confidentiality might not reach an unlicensed person. Ex. 3 at 7.

**4. The theories in Claims II and IV are incompatible with a pre-existing trust.**

Claim II locates the relationship in the very misrepresentations complained of: Tracy Darling allegedly induced Harris to "modify" their arrangement through false promises. Compl. ¶¶ 34–38. A trust arising from the wrongful act itself is precisely what § 523(a)(4) excludes. *In re Angelle*, 610 F.2d at 1339. Claim IV is further removed still. Unjust enrichment is a remedy the law implies after the fact to prevent inequity, not an express trust that existed before the wrong. A debt for unjust enrichment cannot be a debt for fraud "while acting in a fiduciary capacity."

**5. Amendment would be futile.**

Because Harris has verified the facts that defeat this element—an informal, paid, oral arrangement with an unlicensed person—no amendment consistent with Rule 11 could plead a technical trust. Nor does the Complaint invoke, or allege facts supporting, the embezzlement or larceny clauses of § 523(a)(4); the fees Harris paid were payment for sessions, not property

entrusted to Tracy Darling or taken from Harris. The § 523(a)(4) claims should be dismissed with prejudice. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) (leave to amend may be denied as futile where the amended complaint would fail to state a claim).

**B. The § 523(a)(6) claims in Claims I, II, and IV fail to allege a willful and malicious injury.**

**1. Section 523(a)(6) requires a deliberate injury.**

Section 523(a)(6) excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Because "willful" modifies "injury," the exception requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61. In this Circuit, the standard is met only where the debtor acted with an objective substantial certainty of harm or a subjective motive to cause harm. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). A knowing breach of a clear contractual obligation can qualify, but only where the breach is certain to cause injury. *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509–10 (5th Cir. 2003).

**2. The conclusory allegations of intent are contradicted by Harris's own exhibits.**

The Complaint's allegations of intent are conclusions: that Tracy Darling acted "with the specific intent to harm Harris," Compl. ¶ 16; that she "always intended to use the recordings against Harris," *id.* ¶ 37; and that her conduct "was a willful and malicious injury," *id.* ¶¶ 31, 44, 66. *Iqbal* does not credit such allegations, 556 U.S. at 686–87, and here the incorporated exhibits affirmatively undercut them.

*First*, Harris's verified pleading concedes that when the recordings were made Tracy Darling "likely did not know how she would use the recordings in the future." Ex. 1 ¶ 22. Harris pairs that concession with the speculation that Tracy Darling wanted recordings that "could"

embarrass Harris or provide "leverage" at "some future date." *Id.* A wish to possess something that might someday prove useful is neither a motive to injure nor a substantial certainty of injury.

*Second*, Harris's own filings identify Tracy Darling's actual reason for sharing the recordings: she did so "when she thought it might help him in his custody dispute." Ex. 3 at 10. Helping a family member in pending litigation is not a subjective motive to cause harm to Harris. *See In re Miller*, 156 F.3d at 606.

*Third*, Harris disclaims the only identified use of the recordings. Her counsel acknowledged that the son's disclosure to the Clark County Family Court "may have been privileged" and stated that Harris "does not premise liability on this disclosure." Ex. 7 at 16 n.3. What remains is Tracy Darling's alleged private delivery of recordings to her son. The assertion that she intended public distribution, Compl. ¶¶ 17, 49, is supported by no fact—no publication, recipient, date, or medium—and the only further dissemination attributed to anyone is the son's alleged sharing with an unidentified "third party." Ex. 1 ¶ 32. A private transfer to a family member for use in a court proceeding is not an act objectively substantially certain to injure Harris.

Where, as here, the attached exhibits contradict conclusory allegations, the exhibits control. *Riley*, 355 F.3d at 377.

**3. Claim II also fails Rule 9(b).**

Claim II is a fraud claim and must satisfy Rule 9(b). It does not. The Complaint does not say when, where, or how the alleged promise was made, beyond "[f]ollowing the death of Harris's husband in 2017." Compl. ¶¶ 34, 36. It does not identify the words used, whether the promise preceded the first recording or the increase in session frequency, or what Tracy Darling said about how recordings would be used. *See Benchmark*, 343 F.3d at 724. Because Rule 9(b) requires specific facts supporting an inference of fraudulent intent, *Tuchman v. DSC Commc'ns*

*Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), a claim that a promise was fraudulent when made must plead facts showing that the promisor did not intend to perform at that time. The only specific fact Harris pleads on the point—that Tracy Darling "likely did not know how she would use the recordings"—cuts the other way. Ex. 1 ¶ 22.

**4. Claim I seeks to enforce a broken promise, which is not a willful and malicious injury.**

Promissory estoppel enforces a promise on which the promisee relied. Its elements, as Harris pleads them, are the promisor's knowledge of the true facts, intent that the promise be acted upon, the promisee's ignorance, and detrimental reliance. Compl. ¶¶ 25–27; Ex. 3 at 8. None requires an intent to injure, and the only § 523(a)(6) allegation is the conclusion that Tracy Darling's "fraudulent promises were a willful and malicious injury." Compl. ¶ 31. A promise is not an injury. To the extent Claim I rests on the later alleged breach, *Williams* requires a knowing breach that is certain to cause injury, 337 F.3d at 509–10, and for the reasons in Part IV.B.2 the Complaint pleads no facts making injury either certain or intended.

**5. Claim IV seeks restitution of fees voluntarily paid, not compensation for an injury.**

Claim IV alleges that Harris "conferred a benefit" by paying for sessions and that Tracy Darling "appreciated, accepted, and retained" it. Compl. ¶¶ 59, 61. The remedy sought is the return of "the money paid." *Id.* ¶ 63. Receiving payment for sessions that Harris requested and attended is not an injury to Harris, much less a deliberate one. Harris's own theory confirms the point: she told the Nevada court that her unjust enrichment claim did not accrue when Tracy Darling accepted payment, but only upon the alleged breach of confidentiality in or about January 2025. Ex. 7 at 14. On Harris's own account, then, the receipt of fees—the only benefit on which Claim IV rests—was not wrongful when it occurred. The conclusory sentence in paragraph 66 does not supply a willful and malicious injury.

**C. No claim for monetary relief is stated against Wayne Darling.**

Claims I through IV are pleaded only against Tracy Darling. Compl. at 4, 5, 7, 8. The Complaint attributes no conduct to Wayne Darling, who is not a party to the Nevada Case, Ex. 2 at 2. The only claim against him, Claim V under § 727(a)(5), seeks denial of discharge and cannot support a money judgment. Yet the Prayer seeks damages, costs, fees, and interest from "Debtors," and a decree that "all debts determined to be owing by Debtors" are nondischargeable. Compl. at 11, ¶¶ A, B, D. The Court should dismiss those requests as to Wayne Darling or, alternatively, strike them under Rule 12(f).

**D. Dismissal should be with prejudice.**

No amendment can cure the § 523(a)(4) claims. See Part IV.A.5. As to § 523(a)(6), Harris has pleaded her account three times in Nevada, including after the Nevada court granted her leave to amend her fraudulent inducement claim, Ex. 8 at 2. Her own exhibits concede the facts that defeat this element. Amendment would be futile. Stripling, 234 F.3d at 872–73. Alternatively, any amended complaint should be due within fourteen days and limited to the claims addressed in the Court's order.

## V. CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants respectfully request that the Court enter an order, substantially in the form submitted with this Motion:

(a) dismissing with prejudice the claims under 11 U.S.C. § 523(a)(4) asserted in Claims I, II, and IV;

(b) dismissing with prejudice the claims under 11 U.S.C. § 523(a)(6) asserted in Claims I, II, and IV;

(c) dismissing with prejudice all claims for monetary relief and for relief under 11 U.S.C. § 523 against Wayne Alan Darling or, alternatively, striking those requests; and

(d) granting Defendants such other and further relief as is just.

Respectfully submitted,
Norred Law, PLLC

By: __/s/ Clayton L. Everett____
Clayton L. Everett
Texas State Bar No. 24065212
clayton@norredlaw.com
515 E. Border St.
Arlington, Texas 76010
O 817-704-3984, F. 817-524-6686
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2026, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system on all parties registered to receive electronic notices in this case, including counsel for Movant Angela Harris (Marc J. Randazza, ecf@randazza.com; and Jay Blass Cohen, jay@blasslaw.com).

/s/ Clayton L. Everett
Clayton L. Everett

## CERTIFICATE OF CONFERENCE

No conference is required for a motion to dismiss. L.B.R. 7007-1(a). As to the alternative request to strike, I conferred by email with Plaintiff's counsel, Marc J. Randazza and Jay Blass Cohen, on October 20, 2026, and proposed an agreed order narrowing the Motion. Plaintiff agreed to extend Defendants' response deadline (ECF No. 10) but did not state a position on the Motion. I followed up on November 3, 2026, with a draft of the Motion. As of filing, Plaintiff has not stated her position, so the Motion is presented as opposed.

The undersigned counsel will continue to work with opposing counsel to resolve the contents of the motion if possible.

/s/ Clayton L. Everett
Clayton L. Everett