Marc J. Randazza, NDTX Bar No. 651477MA
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Jay Blass Cohen, Texas Bar No. 24069528
BLASS LAW PLLC
4245 N. Central Expy, #490
Dallas, TX 75205
Telephone: 713-664-4000
jay@blasslaw.com

*Counsel for Plaintiff Angela Harris*

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>WAYNE ALAN DARLING, and TRACY ELLEN O'REILLY DARLING,<br><br>Debtors. | Chapter 7<br><br>Case No. 26-42672-ELM7 |
| ANGELA HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>TRACY ELLEN O'REILLY DARLING, and WAYNE ALAN DARLING,<br><br>Defendants. | Adv. Case No. 26-04122-elm<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** |

Defendants ask the Court to dismiss or strike the fiduciary and willful-and-malicious allegations from three of Plaintiff Angela Harris's nondischargeability claims, and to dismiss every demand for monetary relief against Wayne Darling. The motion should be denied.

First, Defendants argue that Harris pled no facts showing that Tracy Darling intended to injure her. This is not correct. Plaintiff alleges that Darling gave the recordings to her son "*for the specific purpose of having him publicly distribute them*" and to "embarrass[] and injur[e]" Harris, and he shared them at least once. Adversary Complaint ("Compl."), Ex. 1 ¶¶ 25, 28, 32. Second, state law recognizes fiduciary duties arising from informal or social relationships, including a counselor manipulating a patient's trust. The Nevada Second Amended Verified Complaint (ECF No. 1-1), incorporated by reference in the adversary complaint (ECF No. 1 at ¶ 7), pleads such a relationship between the parties existed. Further, Harris pleads fraudulent conduct, and she asks in the alternative for leave to plead a claim under 11 U.S.C. § 523(a)(2)(A).

## 1.0 BACKGROUND

### 1.1 The Relationship and Darling's Promises.

Harris was Tracy Darling's counseling patient. Darling was (and is) not a licensed professional but still held herself out as a therapist offering to heal Harris's past trauma. She charged Harris up to $175 per hour for her counseling services. Ex. 1 ¶¶ 9–11. Trusting Darling's promises of professionalism and confidentiality, Harris shared sensitive and confidential information with her. *Id.* ¶ 12. After Harris's husband died, Darling encouraged more frequent sessions and recorded the sessions, promising the recordings would remain confidential. *Id.* ¶¶ 14–19, 44. Harris would not have agreed to higher fees or recording the sessions without Ms. Darling's explicit promises of confidentiality. *Id.* ¶ 19.

### 1.2 Darling's Intent.

Darling "never intended to keep the recordings private," but "had an ulterior motive" and intended "to take advantage of Ms. Harris." *Id.* ¶ 22. She shared the recordings with her son Mr. Kohlrautz so he would "publicly distribute them." *Id.* ¶¶ 25, 28. It is difficult to imagine a more explicit way to plead Ms. Darling's intent to injure Ms. Harris.

### 1.3 Distribution of the Recordings.

Harris learned of the disclosure in January 2025. *Id.* ¶ 24. The recordings were heard by Harris's family and friends and by others. *Id.* ¶ 27. Kohlrautz shared them with at least one third party, *id.* ¶ 32, and extortionately threatened to release them publicly while he was in a custody dispute with Harris's daughter. *Id.* ¶¶ 33–34.

### 1.4 The Nevada Action.

In September 2025, Harris sued Darling and her son, Alexander Kohlrautz, in Clark County, NV. Compl. ¶¶ 7, 10. The court entered a temporary restraining order, Ex. 4, and then a preliminary injunction, denied the motion to dismiss filed by Darling and Kohlrautz without prejudice, and granted leave to amend. Ex. 8 at 2. The operative complaint in the state court action immediately prior to the petition was the Second Amended Complaint, filed by Harris on March 31, 2026. Ex. 1 at 14. The adversary complaint incorporates that pleading and the other Nevada filings. Compl. ¶¶ 7, 10.

## 2.0 LEGAL STANDARD

A complaint survives Rule 12(b)(6) if it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conditions of mind "may be alleged generally." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Well-pleaded factual allegations are assumed true, and the court draws reasonable inferences for the plaintiff. *See Iqbal*, 556 U.S. at 678-79. The Court considers the Complaint and its incorporated exhibits holistically, as exhibits are part of the complaint for all purposes. *See* Fed. R. Civ. P. 10(c); Fed. R. Bankr. P. 7010. An exhibit controls over allegations it contradicts, but it does not defeat allegations left standing. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376–77 (5th Cir. 2004).

## 3.0 DISMISSAL IS NOT WARRANTED

In her adversary complaint, Plaintiff/Creditor Angela Harris set forth five claims for relief: (1) Promissory Estoppel Based on Fraudulent Conduct For Determination of Non-Dischargeability of Debt (11 U.S.C. § 523(A)(4) & (6)); (2) Fraud in the Inducement For Determination of Non-Dischargeability of Debt (11 U.S.C. § 523(A)(4) & (6)); (3) Intentional Infliction of Emotional Distress For Determination of Non-Dischargeability of Debt (11 U.S.C. § 523(A)(6)); (4) Unjust Enrichment by Fraudulent Conduct For Determination of Non-Dischargeability of Debt (11 U.S.C. § 523(A)(4) & (6)); and (5) Objection to Discharge (11 U.S.C. § 727(A)(5)). All five claims are asserted against Defendant/Debtor Tracy Ellen O'Reilly Darling; only the fifth claim is asserted against Ms. Darling's co-debtor, Defendant Wayne Alan Darling. Defendants move only to dismiss the § 523(a)(4) & (a)(6) claims within Claims I, II, and IV, as well as any request for monetary relief against Mr. Darling. The motion should be denied.

### 3.1 Darling Committed Defalcation in a Confidential and Fiduciary Relationship.

Ms. Darling asserts that Claims I, II, and IV, as based on Section 523(a)(4), should be dismissed. Section 523(a)(4) excludes debts from dischargeability "for fraud or defalcation while acting in a fiduciary capacity[.]" Ms. Darling denies the existence of a fiduciary or trust relationship with Ms. Harris within the meaning of Section 523(a)(4). Her denial is improper. In the Fifth Circuit, "state law takes on importance in determining when a trust exists." *In re Angelle*, 610 F.2d 1335, 1340-41 (5th Cir. 1980). Fiduciary relationships may exist if the state law imposes "trust-like duties" on the parties in the relationship. *Id.* State law recognizes such a relationship between Ms. Harris and Ms. Darling.

#### 3.1.1 The Law Recognizes Fiduciary Duties in Confidential Relationships.

Under Nevada law, "[a] 'confidential or fiduciary relationship' exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in

good faith and with due regard to the interests of the one reposing the confidence." *Long v. Towne*, 98 Nev. 11, 13 (1982). "When a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party." *Perry v. Jordan*, 111 Nev. 943, 947 (1995). Further, such "a confidential relationship may arise by reason of kinship or professional, business, or social relationships between the parties." *Id.* Additionally, the psychiatric/patient relationship is "fiduciary in nature[.]" *Massey v. Litton*, 99 Nev. 723, 728 (1983) (citation omitted). Darling, who gained her position of trust as a family member, acted, at all relevant times, just as a psychiatrist would, albeit unlicensed.

Similarly, under Texas law,[1] even in purely personal relationships, informal relationships can give rise to fiduciary duties. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) ("The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved"). Recently, in *Pitts v. Rivas*, the Texas Supreme Court favorably cited to *Thigpen*. 709 S.W.3d 517, 528 (Tex. 2025) (observing that the determination is not based solely on a subjective belief). Objectively, Texas courts consider whether a plaintiff's reliance on the defendant for guidance was justified, the plaintiff's physical and mental condition, and the influence the defendant acquired over the plaintiff. *See Henry v. Henry*, No. 02-24-00507-CV, 2025 Tex. App. LEXIS 5917 (Tex. App.—Fort Worth Aug. 7, 2025).

Counselors have fiduciary relationships with their counselees under Fifth Circuit law. In *Sanders v. Casa View Baptist Church*, a jury found that a marriage counselor "acquired influence and gained [his clients'] trust and confidence," and the appellate court affirmed the presence of a

[1] As the law in both Nevada and Texas impose a fiduciary relationship and fiduciary duties here, no conflict of laws analysis is required.

fiduciary duty. 134 F.3d 331, 334-35 (5th Cir. 1998). The counselor "held himself out as possessing the education and experience of a professional marriage counselor." *Id.* at 337. Just as the defendant in *Sanders* was properly asserted to have acted in a fiduciary capacity while claiming to be a marriage counselor, so, too, did Ms. Darling when she held herself out as a counselor for Ms. Harris. And we must remember that she was not simply acting as a trusted friend, but charged Ms. Harris $175 per hour for her services. *Sanders* and this case are nearly identical.

### 3.1.2 The Second Amended Verified Complaint Pleads Each Factor.

Harris relied on Darling for guidance and paid her for the service based on Darling's false assurances and promises. Darling promised to help Harris heal from trauma, offered opinions on Harris's mental health, and took Harris's money for sessions. Ex. 1 ¶¶ 9–10. Harris disclosed highly sensitive information to Darling, entirely because of Darling's promises. *Id.* ¶¶ 12, 20. Harris was "emotionally devastated and vulnerable," after her husband's death in 2017, and Darling capitalized on that vulnerability to foster Harris's dependency. *Id.* ¶¶ 14–15, 20. Harris also relaxed her own vigilance. She rightly believed that therapists owe a duty of confidentiality, that Darling would honor it, and that this applied to even an unlicensed therapist. *Id.* ¶¶ 21, 30. Darling made promises within the counseling relationship, which began in 2015. *Id.* ¶¶ 9, 17–18, 44. The alleged defalcation therefore arose inside a relationship that predated the wrongdoing.

### 3.1.3 A Technical Trust Existed.

The Complaint pleads the trust-based relationship that the courts recognize, and even alluded to in *Angelle,* the possibility of imposing fiduciary responsibility if state law creates "trust-like duties." *In re Angelle*, 610 F.2d 1335, 1341 (5th Cir. 1980). *Angelle* requires more than a relationship of trust, including a constructive trust, and Harris does not contend otherwise. A technical trust need not be over a financial asset; "proprietary information and trade secrets" are within the ambit of Section 523(a)(4). *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602

(5th Cir. 1998). Here, Ms. Darling was the trustee of Ms. Harris's confidences, which she acquired under false pretenses. Ms. Harris's confidential information was held in recorded format and Ms. Darling breached that trust and her fiduciary duty by distributing Ms. Harris's confidential information to Ms. Darling's son to further his acts of extortion. At all times, Ms. Darling knew of her duty to maintain Ms. Harris's confidential information, and she consciously disregarded that duty. Moreover, Ms. Darling's fraudulent inducement to provide the confidential information and distribution to her son constitutes embezzlement and/or larceny within the meaning of Section 523(a)(4).

#### 3.1.4 Darling's Lack of a License Does Not Overcome Darling's Misrepresentation.

As noted above, Nevada does not condition the existence of duties owed on professional licensure. *See Perry,* 111 Nev. at 947. Similarly, Texas law recognizes unlicensed mental health services providers if they "purport[] to perform mental health services." Tex. Civ. Prac. & Rem. Code § 81.001(2). A mental health services provider in Texas can provide nearly endless forms of treatment related to "emotional, attitudinal, or relationship conflicts," can help patients in "modifying feelings … or behaviors that interfere with effective emotional, social, or intellectual functioning." *Id.* Ms. Darling held herself out as a therapist, and Harris relied on that representation. Ex. 1 ¶¶ 11, 17, 21, 30. Ms. Darling, thereupon, acted as a mental health therapist, and then breached her duties to Ms. Harris. That Ms. Darling also happened to perform mental health services without a license does not negate that she was properly alleged to have performed such services. Thus, there is no basis to dismiss Claims I, II, or IV based on Section 523(a)(4).

### 3.2 Darling Committed a Willful and Malicious Injury.

Ms. Darling willfully and maliciously injured Ms. Harris. Section 523(a)(6) excepts from discharge debts "for willful and malicious injury." The injury must be deliberate or intentional.

*See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Fifth Circuit requires either a subjective motive to cause harm or an objective substantial certainty of harm. *See Miller*, 156 F.3d at 604–05. Both are present here.

**3.2.1 The Complaint Pleads Intent.**

The motion calls Ex. 1 ¶¶ 16, 17, 37, 49 conclusory, but they cannot be read without also reading ¶¶ 25, 28, 29, which are incorporated. These paragraphs allege intent, that Darling "never intended to keep the recordings private or confidential." Ex. 1 ¶ 22. She gave the recordings to her son "for the specific purpose of having him publicly distribute them." *Id.* ¶ 25. She did so "for the purpose of embarrassing and injuring" Harris. *Id.* ¶¶ 28-29.

**3.2.2 Darling Misreads Paragraph 22.**

The motion argues that Harris conceded Darling "likely did not know how she would use the recordings," so Darling lacked willfulness. ECF 12 at 2, 3, 7, 9. This is a misreading of the allegations. In paragraph 22, for example, Ms. Harris alleges that Ms. Darling had an ulterior motive when she proposed the recordings and that she "intended to have recordings of Ms. Harris that could either embarrass Ms. Harris and/or provide Ms. Darling with leverage over Ms. Harris." Ex. 1 ¶ 22. Darling intended to create leverage, despite perhaps not knowing precisely when the recordings would be most embarrassing or most useful for using as leverage and the instruments of extortion. Darling's argument amounts to "I couldn't have intended to rob you because I didn't know what I was going to steal when I broke into your house." While Darling may not have predicted with precision how specifically she would use these recordings, she also never possessed the intent to keep those recordings private. Judge Eller even acknowledged that while "nobody believe[d]" that the intent was "hey, I know ten years from now when . . . my son and his wife get a divorce, I'm going to use this later," but noted that "there could be sufficient facts," indicating

that Darling possessed intent sufficient to rise to the level of fraudulent inducement. *Harris v. Darling*, No. A-25-927577-C, Mot. to Dismiss Hr'g Tr. at 25:18-25.

**3.2.3 The Custody Dispute Supports Intent.**

Defendants misconstrue Harris's TRO motion arguing that Darling shared the recordings "when she thought it might help [her son] in his custody dispute." ECF 12 at 2. The full quote says: "She intended to share the recordings when it would benefit her," and "Darling knew that this representation was false when it was made." *Id.* The motion continues, arguing that Darling betrayed Ms. Harris's trust on purpose "by giving the recordings to her son." *Id.* at 9. The custody dispute is adverse to Harris, as Darling's son was in a custody dispute with Harris's daughter. Ex. 1 ¶¶ 3, 34, 67. Giving Harris's therapy recordings to a litigant to help familial opponents extort their adversaries demonstrates motive aimed at Harris. It was a known zero-sum game; to intend to help her son get a greater custody share, she had to intend to hurt Harris.

**3.2.4 The Distribution Allegations Are Factually Supported.**

Darling argues the Complaint pleads "no publication, recipient, date, or medium." ECF 12 at 8. The Second Amended Complaint addresses each of these. Kohlrautz and at least one third party were the recipients of these private therapy recordings. Ex. 1 ¶¶ 24, 32. Publication occurred when the recordings were heard by Harris's family and friends. *Id.* ¶ 27. The date is the period before Harris discovered the disclosure in January 2025. *Id.* ¶ 24. The medium is the recordings and their potential online publication. *Id.* ¶¶ 28, 33.

Darling argues that Harris "disclaims the only identified use of the recordings." ECF 12 at 8. However, this confuses two uses of the recording. While Footnote 3 addresses disclosure that may or may not be privileged, Ex. 7 at 16 n.3, it does not reach Darling's prior disclosure. It is this prior transfer Harris pleads was wrong. Ex. 1 ¶¶ 24–25, 28. The delivery was specifically with the intent that they be used to harm Harris in the custody dispute.

#### 3.2.5 A Transfer to an Opposing Party in a Custody Fight is Substantially Certain to Cause Injury.

Darling baselessly argues that a private transfer "to a family member for use in a court proceeding" is not substantially certain to injure Harris. ECF 12 at 8. This ignores that the recordings were shared for the purpose of harming Harris's family in court. Intent to have leverage about a litigant's family member's trauma for use against that litigant serves no purpose but to directly harm that person. Ex. 1 ¶¶ 20, 25, 34.

### 3.3 Claim II Satisfies Rule 9(b).

Rule 9(b) requires the who, what, when, where, and how of the misrepresentation. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Claim II meets that standard. Defendants say Claim II does not allege the promise's words or whether it came before the first recording, though it is alleged that the idea to increase frequency and introduce recordings was made following the death of Harris's husband. Ex. 1 ¶ 44. The Second Amended Complaint does not allege the exact date or setting of the promise, but that level of granular specificity is not required to survive a motion to dismiss. "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after Twombly must make relief plausible, not merely conceivable, when taken as true." *Kanneganti*, 565 F.3d at 186 (internal quotations omitted). Further, "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Darling promised that the recordings would remain confidential. Ex. 1 ¶¶ 18, 44. This misrepresentation occurred after Harris's husband died, *id.* ¶¶ 14–15, 44, to create leverage to get Harris to consent to more sessions and recording. *Id.* ¶¶

44–47. Darling misrepresented her intent as doing it to help Ms. Harris, when her real intent was to use the recordings against Harris. *Id.* ¶¶ 22, 45.

Defendants also argue that a promise of future conduct cannot support fraud. However, the question is Darling's intent when she made the promise. Rule 9(b) allows intent to be alleged generally, but the pleading must set out facts showing a motive or circumstances indicating conscious behavior. See Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994). The Complaint does so. Darling "never intended to keep the recordings private." Ex. 1 ¶ 22. And the disclosure followed the plan. *Id.* ¶¶ 24–25; Ex. 3 at 9 (Darling "betrayed that trust, as she planned to do"). The fact that Darling did not know the specific form of embarrassment she intended to exact at the time the promise was made is irrelevant; the question is what Darling's intent at the breach of confidentiality was. Her intent was to harm Harris when the time was right.

**3.4 Claims I and IV Support Recovery of the Fees and Damages.**

**3.4.1 Claim I (Promissory Estoppel).**

Defendants say a promise is not an injury and that promissory estoppel requires no intent to injure. The promise is the misrepresentation, Ex. 1 ¶ 37, but the injury is the deliberate disclosure of highly sensitive personal information. *Id.* ¶¶ 41, 27, 31, 53–55. Disclosing the therapy recordings to Kohlrautz demonstrates the willful and malicious element. *Id.* ¶¶ 25, 28–29. A knowing breach supports nondischargeability where the debtor acted with objective substantial certainty or subjective motive to injure, and the Complaint alleges the latter. *See Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509-10 (5th Cir. 2003).

**3.4.2 Claim IV (Unjust Enrichment).**

Defendants argue that Harris's statute-of-limitations position concedes that the fees were not wrongful when paid. ECF 12 at 9. However, Harris made payments while she was actively deceived about the sessions by Darling's intentional misrepresentation. Thus, Harris's cause

accrued when Darling violated the confidentiality, not when Harris paid Darling. The Complaint alleges that Darling took payment for therapy, while her real motivation and plan was to use those sessions and recordings thereof to harm Harris. Ex. 1 ¶¶ 22, 45, 61–64.

**3.5 The Fees and Damages Should be Held Nondischargeable.**

Harris paid Darling for therapy services relying on Darling's promises of confidentiality. Ex. 1 ¶¶ 19, 22, 45, 61–64. Money obtained through false representations is the core of § 523(a)(2)(A), which Harris seeks leave to add, if this Court decides Darling was not subject to a fiduciary duty. Nevada and Texas courts affirm actual damages and related equitable relief when an informal fiduciary abuses a relationship of trust. *See Morrell v. Morrell*, No. 09-20-00086-CV, 2022 Tex. App. LEXIS 2101, at *61 (Tex. App.—Beaumont Mar. 31, 2022); *Perry,* 111 Nev. at 948-49. Harris asks the Court to determine that any judgment on Claims I, II, III, and IV, including the fees and damages, is nondischargeable.

**3.6 The Relief Sought as to Wayne Darling is Moot.**

Defendants ask the Court to dismiss the money demands against Wayne Darling or, alternatively, to strike them under Rule 12(f). ECF 12 at 10. Claim V objects only to discharge under § 727(a)(5). It seeks no money judgment and proceeds against both debtors. The monetary relief and the § 523 determinations are only sought against Tracy Darling. Defendants are arguing against something that Harris is not seeking. Striking the prayer under Rule 12(f) is unnecessary. Rule 12(f) reaches "redundant, immaterial, impertinent, or scandalous matter," and an overbroad prayer is a matter for amendment, not striking. Fed. R. Civ. P. 12(f); Fed. R. Bankr. P. 7012(b). At worst, the prayer for relief was inartfully drafted. The only relief sought against Wayne Darling, by virtue of him being a co-debtor, is that the objection to discharge of the Debtors under Section 727(a)(5) be sustained. Otherwise, funds that Ms. Darling took from Harris and then put in Mr. Darling's name might not be reached. The relief against him is necessary and limited.

### 3.7 Leave to Amend, in the Alternative, is Proper.

Dismissal with prejudice is not warranted. Leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2); Fed. R. Bankr. P. 7015. District courts afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissal, and that is the appropriate course here. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Defendants argue that Harris has pleaded her account three times, ECF 12 at 10, but each was a Nevada pleading written for state-law claims not addressing § 523. Harris has not yet had an opportunity to replead in this Court. Leave is only denied for futility if the amendment would fail to state a claim. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). That is not the case here. Harris's amendment would:

First, add a claim under 11 U.S.C. § 523(a)(2)(A) for money and fees obtained through the promises alleged in Ex. 1 ¶¶ 18, 44–47. Section 523(a)(2)(A) requires a false representation, intent to deceive when it was made, reliance, and loss. The proof of intent at the time of the representation is the central issue, as *In re Schroud*, 1 B.R. 583, 589–90 (Bankr. N.D. Ill. 1979), illustrates. The Second Amended Complaint pleads the facts on each element: the promise (¶¶ 18, 44), Darling's knowing falsity and intent (¶¶ 22, 45; Ex. 3 at 9–10), reliance (¶¶ 19, 47), and loss (¶¶ 48, 61–64). Further, once money is obtained by fraud, all liability arising from the fraud is excepted from the discharge. *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); and

Second, plead the time, setting, and substance of the 2017 promise. These amendments would not be futile and dismissal with prejudice is inappropriate.

## 4.0 CONCLUSION

The Court should deny Defendants' partial motion to dismiss. In the alternative, the Court should grant Harris leave to file an amended complaint within 30 days.

Dated: November 24, 2026.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza (NDTX Bar No. 651477MA)
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

/s/ Jay Blass Cohen
Jay Blass Cohen (Texas Bar # 24069528)
BLASS LAW PLLC
4245 N. Central Expy, #490
Dallas, TX 75205
Telephone: 713-664-4000
jay@blasslaw.com

*Counsel for Plaintiff Angela Harris*

Case No. 26-04122-elm

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 24, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc J. Randazza